# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
 See Additional Parties Form

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
 TYLER WALTER, a deceased minor, by and through his successor in
 interest, LISA WALTER; LISA WALTER, an individual,

---

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/10/2019** at 01:34:05 PM

Clerk of the Superior Court
By Valeria Contreras,Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

   *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero o bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
 Superior Court of California, County of San Diego
 330 W Broadway,  San Diego, CA 92101

**CASE NUMBER:**
*(Número del Caso):* 37-2019-00053901-CU-CR-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
 Shawn A. McMillan, Esq., 4955 Via Lapiz, San Diego, CA 92122

DATE: 10/11/2019                     Clerk, by  *V Contreras*                     , Deputy
*(Fecha)*                              *(Secretario)*      V. Contreras          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

## EXHIBIT A

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Lisa Walter, et al. v. County of San Diego, et al. | |

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

COUNTY OF SAN DIEGO, a public entity; MELINDA EICHENBERG, an individual; JOANNA KIENTZ, an individual; FANITA DURHAM, an individual; KATHERINE MANNO (TOPPIN), an individual; MELISSA CASTILLO, an individual; and DOES 1 through 50, inclusive,

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

EXHIBIT A

1  Shawn A. McMillan, Esq. – SBN: 208529
2  attyshawn@netscape.net
   Stephen D. Daner, Esq. – SBN: 259689
3  steve.mcmillanlaw@gmail.com
   Adrian M. Paris, Esq. – SBN: 301355
4  adrian.mcmillanlaw@gmail.com
   THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
5  4955 Via Lapiz
   San Diego, California 92122
6  Phone: (858) 646-0069
   Fax: (858) 746-5283
7
   Attorneys for Plaintiffs Tyler Walter, by and through
8  his successor in interest, Lisa Walter, and Lisa Walter

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
10/10/2019 at 01:34:05 PM
Clerk of the Superior Court
By Valeria Contreras, Deputy Clerk

9            SUPERIOR COURT OF CALIFORNIA

10              COUNTY OF SAN DIEGO

11  TYLER WALTER, a deceased minor, by      Case No: 37-2019-00053901-CU-CR-CTL
    and through his successor in interest,
12  LISA WALTER; LISA WALTER, an             **COMPLAINT FOR DAMAGES**
    individual,
13                                           **CAUSES OF ACTION**
14          Plaintiff,
                                             Cause 1:   Wrongful Death
15      vs.                                             (CCP §377.60)
                                                        - **Count 1**: Breach of
16  COUNTY OF SAN DIEGO, a public                        Mandatory Duties
    entity; MELINDA EICHENBERG, an                      - **Count 2**: Breach of Duty of
17  individual; JOANNA KIENTZ, an                        Care
    individual; FANITA DURHAM, an           Cause 2:   Breach of Duty of Care
18  individual; KATHERINE MANNO             Cause 3:   Breach of Mandatory Duties
    (TOPPIN), an individual; MELISSA                    - **Count 1**: Tyler
19  CASTILLO, an individual; and DOES 1                 - **Count 2**: Lisa
    through 50, inclusive,                  Cause 4:   42 U.S.C. §1983
20                                                      - **Count 1**: Tyler (Seizure)
            Defendants.                                - **Count 2**: Lisa (Seizure)
21                                                     - **Count 3**: Lisa
                                                        (Failure to Notify)
22                                           Cause 5:   42 U.S.C. §1983
                                                        (Failure to Protect)
23                                           Cause 6:   *Monell*-Related Claims
                                                        - **Count 1**: Failure to Protect
24                                                     - **Count 2**: Seizure
                                             Cause 7:   Intentional Infliction of
25                                                      Emotional Distress
                                             Cause 8:   Retaliation (1st Amend.)
26                                           Cause 9:   Negligence/Negligence *Per
                                                        Se* (Usurpation of Infant's
27                                                      Remains)
28                                                    **[JURY TRIAL DEMANDED]**

EXHIBIT A

### Prologue

1.      Lisa Walter, on behalf of her dead son, is suing COUNTY OF SAN DIEGO, MELINDA EICHENBERG, JOANNA KIENTZ, FANITA DURHAM, KATHERINE MANNO (TOPPIN), and MELISSA CASTILLO for their actions and/or inactions that led, tragically, to baby Tyler's death while he was under the care, custody and control of San Diego County. Tyler was less than two years old when he was taken from his mother by Defendants on June 26, 2018. He died three months later, on September 22, 2018, while in the County's "care." The day Tyler was taken from his mother he was up to date on all vaccinations, well nourished, well developed, and showed no signs of distress whatsoever. It took just three months in San Diego County's care for Tyler to turn from a happy and healthy toddler – into a dead one.

2.      Among other misdeeds alleged herein, the Defendants, and each of them, failed multiple times in their duties to monitor Tyler's living conditions and update his mother, and the Juvenile Court, regarding the dramatic change in living conditions of his County approved "care-giver" following his placement away from his mother and family home. Defendants' willful inaction caused Tyler to go without essential medical care and/or supervision, which led ultimately to his death. Defendants literally ignored Tyler to death. In doing so, they violated his and his mother's fundamental rights as alleged in greater detail herein.

### Jurisdiction and Venue

3.      This action is brought, at least in part, pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions and or omissions taken under color of law which violated Plaintiffs' rights arising under the 1st, 4th, and 14th Amendments to the United States Constitution. In addition, this action is brought to seek redress for Defendants' acts and/or omissions which resulted in their failure to adhere to the mandatory statutory duties they owed to the Plaintiffs under both federal and state law.

4.      This action also arises under California Code of Civil Procedure §377.60 and §377.30 for the wrongful death of Tyler while Tyler was in the County of San

1    Diego's care, custody and control.

2        5.    The acts and omissions complained of herein occurred primarily in the
3    County of San Diego, and it is believed that all living parties currently reside in the
4    County of San Diego. Venue is proper in the California Superior Court reposed in the
5    County of San Diego.

6        6.    These allegations are based on Plaintiff's personal knowledge, Plaintiff
7    Tyler Walter's successor in interest's personal knowledge, investigation by Plaintiff's
8    Counsel, and on information and belief.

9                                  **Parties**

10       7.    At all times relevant to this Complaint, Plaintiff Tyler Walter, a minor, was
11   a resident of Santee, California. At the time of the allegations in the Complaint, Tyler
12   was less than two (2) years old.

13       8.    At all times relevant to this Complaint, Plaintiff Lisa Walter ("Lisa"), was a
14   resident of Santee, California. Lisa Walter is Tyler's mother, and is the successor in
15   interest to Tyler. Lisa Walter represents Tyler's interest in the instant lawsuit as his
16   successor in interest.

17       9.    Defendant County of San Diego ("County") is a public entity. County of
18   San Diego, Health & Human Services Agency ("HHSA") is an agency and subdivision
19   of the County.

20       10.   HHSA Social Worker Fanita Durham ("Durham") was an individual
21   residing in the County of San Diego, and an officer, agent, and/or employee of the
22   County of San Diego and HHSA.

23       11.   HHSA Social Worker Melinda Eichenberg ("Eichenberg") was an
24   individual residing in the County of San Diego, and an officer, agent, and/or employee of
25   the County of San Diego and HHSA.

26       12.   HHSA Social Worker Joanna Kientz ("Kientz") was an individual
27   residing in the County of San Diego, and an officer, agent, and/or employee of the
28   County of San Diego and HHSA.

**COMPLAINT FOR DAMAGES**

EXHIBIT A

13.   HHSA Social Worker Supervisor Katherine Manno ("Manno") was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the County of San Diego and HHSA.

14.   HHSA Social Worker Melissa Castillo ("Castillo") was an individual residing in the County of San Diego, and an officer, agent, and/or employee of the County of San Diego and HHSA.

15.   Defendants DOES 1 through 50 are sued as fictitious names, their true names and capacities being unknown to Plaintiff. When ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities. Each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiff's damages as herein alleged. Each reference in this Complaint to "Defendant," "Defendants," or a specifically named Defendant refers to and includes all Defendants sued under fictitious names. Plaintiff makes all allegations contained in this Complaint against all Defendants, including DOES 1 through 50.

16.   Plaintiff makes all allegations contained in this Complaint against all Defendants, including DOES 1 through 50.

17.   Whenever this Complaint references any act of the Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 50, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

18.   At all times herein mentioned and with respect to the specific matters alleged in this Complaint, each Defendant (including DOES 1 through 50), was a parent, subsidiary, affiliate, alter ego, partner, agent, franchisee, licensee, employee, employer, controlling franchiser, controlling licensor, principal, and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such

agency, service, employment, control and/or joint venture, and each defendant has ratified, approved, conspired in, profited from and/or authorized the acts of each of the remaining Defendants and/or failed to prevent such acts when having the power and/or duty to do so, with full knowledge of said acts.

19.   At all times herein, each of the above identified defendants was an officer and/or agent of the County of San Diego, and was acting under color of law within the course and scope of their respective duties in doing the things and acts herein alleged.

## GENERAL ALLEGATIONS

20.   Lisa Walter is suing the County and its social workers, both in her individual capacity and her capacity as Tyler's successor in interest, for their actions and/or inactions that led, tragically, to Tyler's death while in the County's custody, care, and/or control.

21.   The County's social workers failed multiple times in their duties to monitor Tyler and update Lisa, as well as the Juvenile Court, regarding the dramatic changes in Tyler's health and the living conditions of his County approved care-giver over the course of the several weeks he remained alive after he was placed one hundred miles away, in Long Beach, CA.

22.   Lisa Walter led a troubled life, but things changed when, in early 2016, Lisa found out she was pregnant with Tyler. She remained clean and sober throughout the pregnancy. The prospect of becoming a mother gave Lisa a new outlook on life and a new perspective.

23.   Lisa actively engaged in programs during her pregnancy, like First 5 San Diego, and other services to ensure she would be able to care for her child. Lisa engaged in the treatment program at Parent Care Family Recovery Center.

24.   On November 8, 2016, Lisa Walter became a single mother when she gave birth to Tyler. Lisa is, and was, an attentive and loving mother. Tyler was the light of her life. Though born ten weeks premature, Tyler was healthy and well developed when he was cleared for release to go home with Lisa after his birth.

EXHIBIT A

25.     Though he was small for his age, his diminutive size was due to the fact that he was born very premature. Regardless, he thrived in Lisa's care. Lisa fed him well, had him vaccinated on schedule, and took him to all of his scheduled medical checkups. While in her care, Tyler continued to thrive.

26.     Lisa would often refer to Tyler as her miracle baby. During the brief time they were together, Lisa was with Tyler every day. Lisa loved Tyler and her life was better with Tyler in it.

27.     Everything in Lisa's life was good. Tyler was a happy and healthy child. He continued to thrive.

28.     Soon, Tyler was babbling, then walking, then beginning to form words – he was a happy little boy. As he grew, Lisa continued to ensure Tyler had continued access to necessary medical care, made it to all of his well baby and other appointments, and followed all of Tyler's doctor's recommendations – including the doctor's recommendations that Tyler be introduced to cereals and solid foods when he was between twelve and fifteen months old; Tyler had a slightly modified dietary timetable approved by his pediatrician due to his being born substantially premature.

29.     As prescribed, Lisa weaned Tyler off of breast milk and formula, and progressed to feeding him solid foods. Tyler regularly ate cereals, crackers, baby food, and the like. Tyler had no health issues while under Lisa's care. Tyler loved being held by Lisa and even loved helping around the house however he could.

30.     Lisa managed to avoid the trouble that had plagued her throughout her youth. Tyler was a massively positive influence on her life. In early 2018, Lisa and Tyler moved into Tyler's grandmother's home.

– ***On June 26, 2018, Tyler is Seized From Lisa Walter's Custody By the County of San Diego***

31.     On June 26, 2018, at around 7:00 a.m., the San Diego County Sheriff's Department performed a search of the Walter Residence. Lisa and Tyler were asleep at the time of the Sheriff's raid. During their search, the Sheriff Deputies found some drugs

at the Walter Residence.

32.   The Sheriff's Department deputies tested Lisa for drugs that morning, and confirmed Lisa was not under the influence when they arrived at her home.

33.   Regardless, Tyler had not consumed any drugs, no drugs were readily available to him, and he had not physically been harmed in any way. Indeed, when deputies began their search and confronted Lisa, she and Tyler were sleeping peacefully.

34.   However, due to the presence of drugs in Lisa's residence, she was arrested. When she was arrested, she requested that her mother (Tyler's grandmother) maintain custody of Tyler during Lisa's incarceration, as is her right under California law.

35.   Nonetheless, HHSA social workers Melinda Eichenberg and Joanna Kientz were called out to the Walter residence to decide what to do with Tyler Eichenberg and Kientz, together decided to seize Tyler from Lisa's custody and care there and then. Eichenberg and Kientz ignored the Sheriff Deputy who informed them that Lisa was not under the influence. At that point in time, Tyler was in good health, and was not in any immediate danger of suffering severe bodily injury within the short time it would have taken to obtain a Court order authorizing Tyler's seizure.

36.   In California, there is no such thing as a go to jail, lose your kid card. In fact, parents have a fundamental right to make arrangements for the custody and continued care of their children during the term of the parent's incarceration without government interference unless, at the time of the child's seizure by government agents, there is specific and articulable evidence to show that the child is in immediate danger of suffering severe bodily injury or death in the few hours it would take to get a warrant.

37.   Prior to Tyler being seized from Lisa's custody and care, Tyler had spent his entire life living with his mother, Lisa, and most of his life with Ruth Walter, his grandmother. At the time Tyler was seized from Lisa's custody, Tyler was a happy and healthy child – and his grandmother was present and readily willing, and available to continue to care for Tyler during the term of Lisa's prospective incarceration.

38.   Lisa expressly requested that Tyler be left with Ruth Walter, his

grandmother, and arranged for him to do so prior to Lisa's removal from the home and ultimate incarceration. On June 26, 2018, Ruth Walter was not being arrested and had no criminal charges filed against her.[1] Eichenberg and Kientz refused Lisa's reasonable request and instead took Tyler into foster care in spite of the fact that there was no evidence that Tyler would be in danger in Ruth's care.[2]

39.   Neither Eichenberg or Kientz had sought or obtained a warrant prior to seizing Tyler and placing him in foster care. Lisa did not consent to Tyler being placed in foster care instead of with Ruth Walter.

40.   Neither Eichenberg or Kientz offered, or even bothered to explore, any lesser intrusive alternatives of ensuring Tyler's safety other than to just seize him. For example, they did not suggest that Ruth Walter move out of the home with Tyler They did not provide any services or propose any lesser intrusive alternatives to Tyler's seizure that would have allowed Tyler to stay with his grandmother Ruth Walter.

41.   Eichenberg told Lisa that Lisa only needed to get into a treatment program to get her child back. Eichenberg told Lisa that Tyler's seizure was only temporary and that Lisa was going to get Tyler back soon.

- ***On June 27, 2018, Tyler Suffers A Severe Injury to His Chin That Requires A Trip to Rady Children's Hospital***

42.   On June 27, 2018, less than 24 hours after the County seized Tyler and while in a County Foster Home, Tyler suffered a laceration to his chin. This required a trip to Rady Children's Hospital where they note that his laceration is serious enough

---

[1] There is no "Go to jail, lose your child" rule in California. (*In re S. D.* (2002) 99 Cal. App. 4th 1068, 1077.) If Lisa could arrange for care of Tyler during the period of her incarceration, the juvenile court had no basis to take jurisdiction in this case, and HHSA "simply had no say in the matter." (*Ibid.*)

[2] Moreover, HHSA had no evidence that Tyler was at risk of physical harm while in Lisa's care. Indeed, when the San Diego Sheriff's Department confronted Lisa, she was with Tyler and he was happy and healthy.

1  that it requires the application of skin adhesive to close his chin wound. He was also
2  given a tetanus vaccine.

3      43.    While Tyler is at Rady Children's Hospital, the doctors also conduct a
4  physical examination. The examining doctor notes that Tyler is up to date on all
5  vaccines, healthy, well-developed, well-nourished and that, other than the serious cut on
6  his chin, Tyler is not suffering distress.

7      44.    At no point prior to the vaccine being given did Defendants even attempt to
8  contact Lisa regarding Tyler's injury and the medical procedures to be performed on her
9  child.

10     45.    In addition, no County social worker, including Fanita Durham, the HHSA
11  social worker responsible for Tyler's care and supervision while he was in the County's
12  custody, ever contacted Lisa to inform her of Tyler's injury and treatment.

13     46.    Indeed, Lisa was not even told of Tyler's injury and treatment until the end
14  of July, when Tyler was transferred from that initial foster home.

15  –   ***Through All Of July 2018, Defendants Prevented Lisa From Visiting Tyler***
16      ***While He Is In Foster Care***

17     47.    After a week of incarceration, Lisa contacted Durham to obtain information
18  on how to reunify with Tyler. Lisa immediately wanted to know what services were
19  available to her, and what she needed to do to reunify with Tyler.

20     48.    Durham told Lisa that Tyler would be out of Lisa's care for a minimum of
21  six months. Durham iterated that no matter the circumstances she never returns any child
22  earlier than six months – ever. Durham voiced only contempt for Lisa. Durham was
23  incredibly rude to Lisa and told Lisa that she would not refer Lisa to any programs or
24  services, in spite of her obligation to do so. Durham instructed Lisa that she was on her
25  own to obtain the services necessary to reunite with her toddler, Tyler.

26     49.    Lisa suggested and requested alternatives to leaving Tyler in foster care,
27  such as ensuring Ruth and Tyler lived by themselves. But, Durham would not listen to
28  anything Lisa had to say – after all, as far as Durham was concerned, Lisa was a no good

**COMPLAINT FOR DAMAGES**

EXHIBIT A

1   drug addict.

2       50.    Indeed, Durham was unwilling to do anything to help Lisa. Durham told

3   Lisa she failed to complete the paperwork necessary for Lisa to visit Tyler in his foster

4   placement. Weeks went by and Lisa was precluded from seeing Tyler

5   –   *On July 25, 2018, The County of San Diego Places Tyler With 19-Year Old*

6       *Genevieve Walter*

7       51.    On June 26, 2018 – i.e., the night he was taken from Lisa – he was tested for

8   drugs. On July 13, 2018, the County of San Diego confirmed definitively that were no

9   drugs in Tyler's system on June 26, 2018.

10      52.    Lisa still earnestly wished for Tyler to be placed with Ruth Walter and told

11  Defendants this on multiple occasions, including the night he was taken all the way up to

12  July 13, 2018, and beyond.

13      53.    Lisa wished to reunify with Tyler and reunification services were ordered by

14  the Court. Lisa actively participated in those services.

15      54.    In the interim, Defendants Durham and Katherine Manno, Durham's

16  supervisor, told Lisa that until they felt she had made enough progress to reunify with

17  Tyler, he would need to continue to live outside her care.

18      55.    Again, Lisa requested that Tyler be placed with Ruth, his grandmother. But,

19  without giving any valid reason at all, Defendants Durham, Manno, and DOES 1-50, and

20  each of them, continued to refuse to place Tyler with his grandmother Ruth.

21      56.    Rather than place Tyler with Ruth Walter, as Lisa repeatedly requested,

22  Durham and Manno told Lisa that her childless 19-year-old niece, Genevieve Walter,

23  who lived 100 miles away in Long Beach, California, was the only acceptable relative

24  placement.

25

26  / / /

27

28  / / /

**COMPLAINT FOR DAMAGES**

10

EXHIBIT A

57.   At the time, Genevieve[3] was living with her female partner in Long Beach, in a home daycare where multiple other children and adults passed through on a daily basis. Genevieve had been living in Long Beach for approximately six months when Defendants decided to place Tyler in her care.

58.   Lisa knew that Ruth Walter would be the best placement for Tyler, and repeatedly told Defendants this. But, Defendants Durham and Manno rejected this option and provided no other alternatives for placement besides Genevieve or foster care.

59.   Defendants Durham and Manno, and each of them, knew that in order to comply with her reunification plan, Lisa would have to participate in regular visitation with Tyler. After all, statistically speaking, visitation is the number one indicator of success in reunification. Instead of facilitating Lisa's visitation, Defendants, and each of them, placed Tyler over a hundred miles away, in Long Beach, where Genevieve lived. Lisa was forced to either travel several hours to visit her child or ask 19-year-old Genevieve to travel several hours with Tyler to Santee, California. Even the Juvenile Court judge, upon learning of the placement, questioned the Defendants' decision and expressed concern that Tyler was placed outside the County of San Diego. Regardless, Defendants Durham and Manno used Tyler's remote placement as a punishment tool – to impose a huge burden on Lisa in order for her to see her own child. Their intent was to make visitation so extremely difficult and burdensome on Lisa, that she would either give up or fail – the effect of which was to impair Lisa's ability to reunify with Tyler

60.   Needless to say, this significant distance and travel time posed foreseeable and predictable problems in scheduling regular visits as Lisa was also saddled with the other local (San Diego) mandatory services she was required to schedule, actively participate in, and finish in order to reunify with her baby.

61.   All the while, for some unknown reason, Defendants Durham, Manno,

_____

[3] Plaintiffs refer to Ms. Genevieve Walter by her first name not out of disrespect but to avoid confusion.

EXHIBIT A

1  DOES 1-50 and the County failed to provide Tyler with essential services to ensure his

2  continued safety and security and to ensure he had at least minimally adequate care,

3  including healthcare. For example, Defendants Durham and Katherine Manno and DOES

4  1-50, and each of them, failed to establish health insurance for Tyler or provide any

5  means for Tyler to receive/pay for medical care while in Genevieve's care.

6      62.     Genevieve requested of Durham multiple times that Tyler be provided

7  health insurance so that she could take him to a medical provider, if necessary. But,

8  Genevieve's requests fell on deaf ears.

9  –   ***Manno and Durham Interfere With Lisa's Treatment and Further Delay her***

10     ***Reunification Progress***

11     63.     As another example of Defendants' intent to interfere with Lisa's

12  reunification, on August 9, 2018, Manno demanded that Lisa attend a meeting with her

13  on August 10, 2018 – without advanced notice. Lisa objected and told Manno that she

14  had a session scheduled with Parent Care that day. Manno ordered Lisa to skip her

15  Parent Care session (a requirement for reunification) and instead to attend the meeting

16  with Manno.

17     64.     On August 10, 2018, when Lisa drove to the El Cajon HHSA office,

18  Durham and Manno said that the meeting was cancelled – without any explanation at all.

19  Thus, Lisa missed an important treatment session to go to a meeting demanded by

20  Durham and Manno that was abruptly cancelled by Durham and Manno without

21  notification. The outfall was that Lisa was unjustly documented as non-compliant with

22  her reunification services plan. This had been Durham and Manno's plan all along.

23  –   ***Little Did Lisa Know That August 18, 2018, She Had Her Only – and Final –***

24     ***Visit With Tyler***

25     65.     On August 18, 2018, Lisa had a scheduled visit with Tyler at Big Rock Park

26  in Santee. Ruth Walter also participated in the visit. Tyler did not look well and Lisa was

27  concerned about his health.

28     66.     Lisa told Genevieve to take Tyler to the doctor and Genevieve said she

EXHIBIT A

would do so the next day. Lisa tried, multiple times, to get in contact with Durham regarding Tyler's health issues but Durham, as was her habit, never returned Lisa's calls.

67.     Lisa was understandably sad to still be separated from Tyler, but was now more determined than ever to complete the offered services and reunify with him. Lisa knew at that time that she would be able to be with Tyler soon, if she continued with her services. Unfortunately, August 18, 2018 would be the last day that Lisa saw her son alive. Lisa was not able to be with Tyler, because he died before Lisa had another visit.

- ***Durham Fails to Supervise and Monitor Tyler While He Is In Genevieve's Care And Fails to Provide Tyler With Health Insurance***

68.     On August 22, 2018, Durham spoke with Genevieve, and scheduled a visit to see Tyler in Long Beach, CA on August 29, 2018. Durham only saw Tyler once while he was reposed in Long Beach, and that visit lasted only about five (5) minutes. Durham continued with her, by now well established pattern, of ignoring everyone in Tyler's case. Durham had still, even now, failed to provide essential medical insurance for Tyler so that Genevieve could get him looked at and/or treated for basic medical issues.

69.     On September 11, 2018, Genevieve took Tyler to Los Alamitos Medical Center as he was repeatedly throwing up. There, a doctor examined Tyler, ran blood tests, gave Tyler an IV, checked his heart rate, had a catheter placed, and administered medication. The doctor set up a follow-up appointment, and sent Genevieve and Tyler on his way. During this time, Genevieve repeatedly attempted to contact Durham, but received no response.

70.     After leaving Los Alamitos, while on the road home, Tyler began vomiting again. This time, Genevieve took Tyler to Long Beach Memorial Medical Center. After waiting there in the Emergency Room for a prolonged period of time, Genevieve became impatient, and left with Tyler. She called Durham again, but as usual, received no response.

71.     A few days later, Genevieve took Tyler back to Los Alamitos Medical Center for his follow up visit. But, she was turned away because Durham and Manno had

utterly failed to provide Genevieve with, or even bothered set up Tyler's medical insurance program. Thus, Tyler still lacked the necessary health insurance. Defendants Durham and Manno continued to fail to ensure that Tyler's basic medical needs were met until the day he died.

72.    Indeed, Tyler was having difficulties eating from his illness and the County was non-responsive to Tyler's health concerns. But, Durham, per her usual practice ignored these concerns.

73.    As a matter of law, regulation, procedure, and policy Tyler's medical insurance was required to be in place and fully functional before Defendants, and each of them, dumped Tyler into nineteen year old Genevieve's "care." But, Defendants failed to do so.

– *On or Around September 17, 2018, Genevieve Loses Her Home; She and Tyler Live Out of Genevieve's Car; The County Fails to Update Lisa and the Juvenile Court*

74.    On or around September 17, 2018, Genevieve and her girlfriend got into an argument with the girlfriend's grandmother. The grandmother threw them out of the home. Initially, they went to stay with a friend.

75.    About that same time, September 17, 2018, Tyler's case was transferred from Durham to another HHSA social worker, Melissa Castillo ("Castillo"). As of September 17, 2018, Durham had only visited Tyler in Long Beach one time and had been almost entirely incommunicado with Genevieve.

76.    On September 21, 2018, Castillo visited Tyler and Genevieve Walter in Long Beach. No HHSA social worker updated Lisa or the Juvenile Court about Tyler's then-current living conditions or health. By then, Genevieve had been evicted from where she was living with her girlfriend. Genevieve, her girlfriend, and Tyler were now homeless, and living out of Genevieve's car in a park in Long Beach. At this time, Tyler was looking pretty bad – with dark circles under his eyes, and bruises all over his head and face.

EXHIBIT A

77.    At the time, Lisa did not know that Genevieve was homeless and living out of her car – and Lisa hadn't seen Tyler since her visit on August 18th. Durham, Manno, and Castillo did not inform Lisa about this important change in Genevieve and Tyler's living conditions. Lisa had no idea that Tyler's living situation went from bad to worse.

– ***On September, 22, 2018, After Less Than Three Months in the County's Custody, Care, and Control, Tyler is Dead***

78.    The day after Castillo visited Tyler, September 22, 2018, the Long Beach Police Department was called out to the park where Genevieve Walter and her girlfriend were living out of their car.

79.    Genevieve had placed Tyler in the back seat and unhooked Tyler from his car seat as they rested there. As Tyler slept, Genevieve and her girlfriend started getting high and smoking marijuana in the car. After some time went by, Genevieve noticed Tyler had gone limp in the car seat. Tyler had stopped breathing. Two bystanders performed CPR on Tyler. When EMS arrived, they transported Tyler to Long Beach Memorial Hospital where he could not be revived.

80.    Tyler Walter was pronounced dead at 9:13 p.m. on September 22, 2018.

81.    Tyler's death was ruled suspicious, i.e., he died under "mysterious circumstances." At the time of Tyler's death, he had bruises across his face and behind his ear. This bruising would have been noticeable the previous day, September 21, when the County social worker came to visit Tyler.

82.    Lisa did not learn of Tyler's death from the County or any County social worker. Instead, Lisa was told later by a friend.

– ***In October 2018, the County Refuses to Relinquish Tyler's Body to Lisa***

83.    After Tyler's death, Lisa was in shock. She was distraught and inconsolable. Tyler was her only child and he had been taken from her and killed. Lisa desperately wanted to know what had happened to her son, but no one would give her any answers.

84.    On October 2, 2018, at Defendants Castillo and the County's request, the Juvenile Court terminated jurisdiction. At the time of Tyler's death, the case was a

**COMPLAINT FOR DAMAGES**

15

EXHIBIT A

Family Reunification case and Lisa participating actively in the reunification plan/services. She was on track for Tyler to be returned to her care.

85.    Obviously, reunification would never come to pass. Instead, Tyler needlessly died homeless, living in a car in a park over a hundred miles away from his mother, less than three months after entering the County's "care."

86.    Adding further trauma, Lisa was barred from retrieving Tyler's remains in October 2018. Importantly, at no point were Lisa's parental rights ever terminated. But, the County refused to relinquish Tyler's body to Lisa. In spite of Lisa's protest, the County gave the body to others.

87.    The County then planned and arranged Tyler's October 20, 2018 funeral, pushing for Tyler's immediate cremation – without any input from Lisa and over her objection.

88.    Due to the County's wrongful interference, Tyler's funeral was arranged by the very people whose actions led to his death. He was promptly cremated. But, Lisa had wanted Tyler to be buried. Lisa was not even consulted by the County as to the disposition of her son's remains.

89.    Durham and Castillo brazenly attended Tyler's funeral, in direct contravention of Lisa's wishes. According to Defendants, and each of them, Lisa had no say even in who attended her son's funeral or in the disposition of his remains.

## FIRST CAUSE OF ACTION

### (*Wrongful Death (CCP §377.60)*)

**By Plaintiff Lisa Walter Against Defendants County, Fanita Durham, Katherine Manno, Melissa Castillo, and DOES 1 through 50**

#### Count 1
### (*Breach of Mandatory Duties Resulting In Tyler Walter's Death*)
### (*CCP §377.60; 815.2; 815.6; 820*)

90.    Plaintiff incorporates each and every of the above allegations of fact and law as though fully set forth herein.

EXHIBIT A

91.   Plaintiff Tyler Walter, deceased at less than two years of age, left no issue or surviving spouse.

92.   Plaintiff Lisa Walter is Tyler's natural mother whose parental rights were never terminated and thus has standing under CCP §377.60(a) to bring a wrongful death action. Thus, Lisa Walter is a rightful heir under CCP §377.60(a) and Probate Code §6402(b) and §6450(a).

93.   Tyler was a dependent of the San Diego County Juvenile Court at the time of his death. At this time, Tyler was in the custody, supervision, care and control of the HHSA for the purpose of providing care, supervision and control of the minor's health, welfare, safety, and care. At such time, the rights, duties, and responsibilities of Lisa Walter were suspended, and such duties and obligations were assumed by the HHSA and its social workers. Thus, the County and each of the individual Defendants assumed mandatory statutory duties arising under state law, to provide for the continued safety and security of the child and to provide at least minimally adequate care, including timely healthcare.

94.   Plaintiff further detrimentally relied upon the County and HHSA to provide for his care, health, welfare, safety and well-being, and for the supervision provided to Tyler. Plaintiff detrimentally relied upon Defendants Durham, Manno, and Castillo, and DOES 1-50, to fulfill their duties, which included the duty and responsibility (1) to supervise the foster care and services that Genevieve Walter were providing Tyler, and (2) to supervise foster children HHSA placed.

95.   Defendants Durham, Manno, and Castillo, and DOES 1-50's activities and responsibilities, and Plaintiff's detrimental reliance thereon, and Tyler being in the County's custody and care, a special relationship was established between Plaintiff and the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50. As a result of the special relationship, Defendant County and the individual Defendants, and each of them, had an affirmative duty to supervise Tyler and a duty to come to the aid of Tyler and to prevent neglect, abuse, and/or mistreatment.

96.     During the period of time that Tyler was in the County's jurisdiction, custody, and control, his health began to decline, and, as Defendants had failed to provide the required health insurance, monitoring, services, as well as adequate supervision and monitoring, Plaintiff died.

97.     The County and Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, knew or with the exercise of reasonable care should have known, or reasonably should have known, that Tyler was unable to care for himself and would require adequate monitoring and/or supervision, as well as medical and/or health services to ensure his health and/or safety, and, in the proper exercise of their respective duties and responsibilities, Defendants would have obtained such knowledge. However, the County and Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, failed and neglected to properly exercise their respective duties and responsibilities and therefore did not take action to prevent or stop Tyler's harm, and/or to adequately supervise and/or monitor Tyler's placement with 19-year-old Genevieve Walter. Instead, the County and Defendants Durham, Manno, and Castillo, and DOES 1-50, allowed Tyler to stay and remain in Genevieve Walter's care despite the fact that Tyler did not have the necessary health and/or medical services to ensure his continued health, safety, and security. Due to these failures, Tyler died.

98.     The HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, knew, or with the exercise of reasonable care should have known, that Tyler was a vulnerable minor due to his young age and required adequate supervision, monitoring, and health services. Despite this, the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50: (1) failed to reasonably and/or adequately place Tyler with an appropriate care giver, (2) failed to adequately supervise Tyler after placing him in the care of 19-year-old Genevieve Walter, (3) allowed Tyler to remain in Genevieve's care even after his health showed symptoms of declining, (4) failed to provide necessary health insurance and/or medical services for Tyler, over the course of several months and/or (5) failed to keep Lisa and the Juvenile Court apprised of Tyler's condition while

in placement, i.e., the fact that he was homeless and living in a park out of the back seat of a car. This conduct, or rather misconduct, was a substantial factor is causing Tyler's wrongful death while in the County's "care."

99.     Despite the existence of the special relationships between the Plaintiff and the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, Defendants breached their mandatory duties as well as their duty of due care under the special relationship while acting within the scope of their agency or employment with the County of San Diego, by failing and neglecting to fulfill or perform their respective duties to control, monitor, care for, provide services for/to, and protect Tyler's health, safety and well-being while he was in the County's exclusive jurisdiction, custody, and control.

100.   As a result, Defendants breached their duty of reasonable care for a minor in the County's custody. Defendants also breached their special duties owed to the special relationship between a minor in foster care and the County. Moreover, Defendants also breached several mandatory statutory duties resulting in Tyler's death. Specifically, the numerous mandatory duties and obligations breached by Defendants Durham, Manno, and Castillo, and DOES 1-50, include, but are not limited to, the following:

a.      Cal. Welf. & Inst. Code, §361.4 and CDSS MPP Regulations 31-405, 31-420, and 31-445, by failing to fulfill a social worker's responsibilities for placement.

b.      Cal. Welf. & Inst. Code, §361.3 and CDSS MPP Regulations 31-405.12, by failing to give preferential consideration for placement of the child to an adult who is a grandparent, aunt, uncle or sibling of the child.

c.      CDSS MPP Regulations 31-320 and 31-330, by failing to adequately conduct face-to-face contacts with Tyler.

d.      CDSS MPP Regulations 31-501, by failing to report and/or investigate reports of neglect and/or abuse of Tyler.

EXHIBIT A

   e.   Cal. Welf. & Inst. Code, §16000 and CDSS MPP Regulations 31-505, by
        failing to provide adequate supervision, adequate services, and continued
        case plan updates for an out-of-county placement.

   f.   CDSS MPP Regulations 31-310, 31-445(i), and 31-405.22, by failing to
        monitor Tyler's physical and emotional condition, and failing to take
        necessary actions to safeguard Tyler's growth and development while in
        Genevieve Walter's placement.

101.   California Government Code, §820 provides that an employee of a public entity is liable for his or her acts or omissions to the same extent as a private person, and, under California Government Code §815.2, the public entity that employs the individual is vicariously liable for the torts of its employees committed in the scope of employment.

102.   As a proximate result of Defendants' breach of their mandatory duties, and/or their duty of due care under the respective special relationships created and existing between Plaintiff and the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, Tyler suffered severe injuries, damages, and death as alleged herein. Tyler suffered physical injuries, neglect, abuse, and ultimately death, which was reasonably foreseeable and could, should, and/or would have been prevented in the exercise of due care including, but not limited to, providing health insurance for Tyler while in the County's care, providing adequate monitoring and/or supervision of Tyler while in Genevieve's care, providing adequate services and/or resources for Tyler while in the County's care and adequately updating both Lisa and the Juvenile Court as to Tyler's condition while in the County's care.

103.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered general and special damages according to proof at trial, including but not limited to, damages stemming from the physical injuries suffered by Tyler, physical and/or mental anxiety, loss of Tyler's love, companionship, comfort, care, assistance, protection, affection, society, and moral support from September 22, 2018 onwards, among other things.

### Count 2
### *(Breach of Duty of Due Care Arising Under Special Relationship Resulting In Tyler Walter's Death)*
### *(CCP §377.60)*

104.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

105.   Plaintiff Tyler was a dependent of the San Diego County Juvenile Court. At this time, Tyler was in the custody, supervision, care and control of the HHSA for the purpose of providing care, supervision and control of the minor's health, welfare, safety, and care. At such time, the rights, duties, obligations, and responsibilities of Tyler's mother were suspended, and such duties and obligations were assumed by the HHSA and its social workers.

106.   Plaintiff further detrimentally relied upon the County and HHSA to provide for his care, health, welfare, safety and well-being, and for the supervision provided to Plaintiff. Plaintiff detrimentally relied upon Defendants Durham, Manno, and Castillo, and DOES 1-50, to fulfill their duties, which included the duty and responsibility (1) to supervise the foster care and services that Genevieve Walter were providing Tyler, and (2) to supervise foster children HHSA placed.

107.   Defendants Durham, Manno, and Castillo, and DOES 1-50's activities and responsibilities, and Plaintiff's detrimental reliance thereon, and Tyler being in the County's custody and care, a special relationship was established between Plaintiff and the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50. As a result of the special relationship, Defendant County and the individual Defendants, and each of them, had an affirmative duty to supervise Plaintiff and a duty to come to the aid of Plaintiff and to prevent neglect, abuse, and/or mistreatment.

108.   During the period of time that Plaintiff was in the County's jurisdiction and control, his health began to decline, and, as Defendants had failed to provide the required health insurance, monitoring, services, as well as adequate supervision and monitoring, Plaintiff passed away.

EXHIBIT A

109.    The County and the Defendants Durham, Manno, and Castillo, and DOES 1-50, knew or with the exercise of reasonable care should have known, or reasonably should have known, that Tyler was unable to care for himself and would require adequate monitoring and/or supervision, as well as medical and/or health services to ensure his health and/or safety, and, in the proper exercise of their respective duties and responsibilities, Defendants would have obtained such knowledge. However, the County and Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, failed and neglected to properly exercise their respective duties and responsibilities and therefore did not take action to prevent or stop Tyler's harm, and/or to adequately supervise and/or monitor Tyler's placement with 19-year-old Genevieve Walter. Instead, the County and Defendants Durham, Manno, and Castillo, and DOES 1-50, allowed Tyler to stay and remain in Genevieve Walter's care despite the fact that Tyler did not have the necessary health and/or medical services to ensure his health and safety. As a direct result of these failures, Tyler died.

110.    Despite the existence of the special relationships between the Plaintiff and the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, Defendants breached the duty of due care under the special relationship while acting within the scope of their agency or employment, by failing and neglecting to fulfill or perform their respective duties to control, monitor, care for, and protect Plaintiff's health, safety and well-being while in Genevieve Walter's care subject to the County's jurisdiction and control.

111.    California Government Code §820 provides that an employee of a public entity is liable for his or her acts or omissions to the same extent as a private person, and, under California Government Code §815.2, the public entity that employs the individual is vicariously liable for the torts of its employees committed in the scope of employment.

112.    As a proximate result of the breach of duty of due care under the respective special relationships created and existing between Plaintiff and the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, Plaintiff suffered

severe injuries, damages, and death as alleged herein. Plaintiff suffered physical injuries, neglect, and death, which was reasonably foreseeable and could, should, and/or would have been prevented in the exercise of due care including, but not limited to, providing health insurance for Tyler while in the County's care, providing adequate monitoring and/or supervision of Tyler while in Genevieve's care, providing adequate services and/or resources for Tyler while in the County's care and adequately updating both Lisa and the Juvenile Court as to Tyler's condition while in the County's care.

113.   Plaintiff further alleges that the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, failed and neglected to establish and implement policies and procedures to insure the health, safety and well-being of Plaintiff and other minors, including, but not limited to, the failure to develop and institute policies and procedures for adequate supervision and/or monitoring of minors in the County's care, providing adequate services, providing health insurance, providing proper care to infants in the County's care, and other methods designed to discover and prevent harm, mistreatment, physical injury, and denial of personal rights of minor dependents, including Plaintiff Tyler Walter.

114.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered general and special damages according to proof at trial, including but not limited to, damages stemming from the physical injuries suffered by Tyler, physical and/or mental anxiety, loss of Tyler's love, companionship, comfort, care, assistance, protection, affection, society, and moral support from September 22, 2018 onwards, among other things.

## SECOND CAUSE OF ACTION

### (*Breach of Duty of Due Care Arising Under Special Relationship*) (*CCP §335.1; 377.20; 377.30*)

**By Plaintiff Tyler Walter, Through His Successor In Interest Lisa Walter, Against Defendants County, Fanita Durham, Katherine Manno, Melissa Castillo, and DOES 1 through 50**

115.   Plaintiff hereby incorporates by reference and re-alleges each and every

EXHIBIT A

allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

116.   Plaintiff Tyler Walter brings this cause of action against Defendants as the cause of action survives his death under CCP §377.20 and is brought on his behalf by his successor in interest, Lisa Walter, under CCP §377.30.

117.   Lisa Walter is Tyler's natural mother whose parental rights were never terminated and is a rightful heir under CCP §377.60(a) and Probate Code §6402(b) and §6450(a). She may bring this cause of action on behalf of Tyler as his successor in interest.

118.   Plaintiff Tyler was a dependent of the San Diego County Juvenile Court. At this time, Tyler was in the custody, supervision, care and control of the HHSA for the purpose of providing care, supervision and control of the minor's health, welfare, safety, and care. At such time, the rights, duties, obligations, and responsibilities of Tyler's mother were suspended, and such duties and obligations were assumed by the HHSA and its social workers.

119.   Plaintiff further detrimentally relied upon the County and HHSA to provide for his care, health, welfare, safety and well-being, and for the supervision provided to Plaintiff. Plaintiff detrimentally relied upon Defendants Durham, Manno, and Castillo, and DOES 1-50, to fulfill their duties, which included the duty and responsibility (1) to supervise the foster care and services that Genevieve Walter were providing Tyler, and (2) to supervise foster children HHSA placed.

120.   Defendants Durham, Manno, and Castillo, and DOES 1-50's activities and responsibilities, and Plaintiff's detrimental reliance thereon, and Tyler being in the County's custody and care, a special relationship was established between Plaintiff and the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50.

121.   As a result of the special relationship, Defendant County and the individual Defendants, and each of them, had an affirmative duty to supervise Plaintiff and a duty to come to the aid of Plaintiff and to prevent neglect, abuse, and/or mistreatment.

COMPLAINT FOR DAMAGES

24

EXHIBIT A

122.   From the first day that Plaintiff was in the County's custody, the County failed to adequately monitor and supervise Tyler and ensure that his basic health and safety needs were being met. In the span of three months, Tyler suffered multiple injuries and illnesses and Defendants failed to ensure that Tyler received adequate medical care.

123.   During the period of time that Plaintiff was in the County's jurisdiction and control, his health began to decline, and, as Defendants had failed to provide the required health insurance, monitoring, services, as well as adequate supervision and monitoring, Plaintiff passed away.

124.   The County and the Defendants Durham, Manno, and Castillo, and DOES 1-50, knew or with the exercise of reasonable care should have known, or reasonably should have known, that Tyler was unable to care for himself and would require adequate monitoring and/or supervision, as well as medical and/or health services to ensure his health and/or safety, and, in the proper exercise of their respective duties and responsibilities, Defendants would have obtained such knowledge.

125.   However, the County and Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, failed and neglected to properly exercise their respective duties and responsibilities and therefore did not take action to prevent or stop Tyler's harm, and/or to adequately supervise and/or monitor Tyler's placement with 19-year-old Genevieve Walter. Instead, the County and Defendants Durham, Manno, and Castillo, and DOES 1-50, allowed Tyler to stay and remain in Genevieve Walter's care despite the fact that Tyler did not have the necessary health and/or medical services to ensure his health and safety. As a direct result of these failures, Tyler passed away.

126.   Despite the existence of the special relationships between the Plaintiff and the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, Defendants breached the duty of due care under the special relationship while acting within the scope of their agency or employment, by failing and neglecting to fulfill or perform their respective duties to control, monitor, care for, and protect Plaintiff's health, safety and well-being while in Genevieve Walter's care subject to the

1    County's jurisdiction and control.

2        127.   California Government Code §820 provides that an employee of a public
3    entity is liable for his or her acts or omissions to the same extent as a private person, and,
4    under California Government Code §815.2, the public entity that employs the individual
5    is vicariously liable for the torts of its employees committed in the scope of employment.

6        128.   As a proximate result of the breach of duty of due care under the respective
7    special relationships created and existing between Plaintiff and the HHSA, Defendants
8    Durham, Manno, and Castillo, and DOES 1-50, and each of them, Plaintiff suffered
9    severe injuries, damages, and death as alleged herein. Plaintiff suffered physical injuries,
10   neglect, and death, which was reasonably foreseeable and could, should, and/or would
11   have been prevented in the exercise of due care including, but not limited to, providing
12   health insurance for Tyler while in the County's care, providing adequate monitoring
13   and/or supervision of Tyler while in Genevieve's care, providing adequate services
14   and/or resources for Tyler while in the County's care and adequately updating both Lisa
15   and the Juvenile Court as to Tyler's condition while in the County's care.

16       129.   Plaintiff further alleges that the HHSA, Defendants Durham, Manno,
17   and Castillo, and DOES 1-50, and each of them, failed and neglected to establish and
18   implement policies and procedures to insure the health, safety and well-being of Plaintiff
19   and other minors, including, but not limited to, the failure to develop and institute
20   policies and procedures for adequate supervision and/or monitoring of minors in the
21   County's care, providing adequate services, providing health insurance, providing proper
22   care to infants in the County's care, and other methods designed to discover and prevent
23   harm, mistreatment, physical injury, and denial of personal rights of minor dependents,
24   including Plaintiff Tyler.

25       130.   As a direct and proximate result of these Defendants' misconduct, Plaintiff
26   has suffered, general and special damages according to proof at trial, including but not
27   limited to, physical and/or mental anxiety and anguish and death.

28       131.   The individual Defendants' malicious, despicable, and/or wrongful conduct

**COMPLAINT FOR DAMAGES**

26

EXHIBIT A

1    as herein alleged was intentional, done with malice, and/or with a conscious disregard

2    for Plaintiff's rights, and as a result of this conduct, and under CCP §377.34, Plaintiff is

3    entitled to recover punitive damages according to proof at trial – against the individual

4    defendants only.

5                            **THIRD CAUSE OF ACTION**

6                            (*Breach of Mandatory Duties*)

7                                    **Count 1**
     (*CCP §335.1; 377.20; 377.30; 815.2; 815.6; 820*)

8    **By Plaintiff Tyler Walter, Through His Successor In Interest Lisa Walter, Against**
     **Defendants County, Fanita Durham, Katherine Manno, Melissa Castillo,**
9                            **and DOES 1 through 50**

10       132.   Plaintiff hereby incorporates by reference and re-alleges each and every

11   allegation set forth in each and every preceding paragraph of this Complaint, as though

12   fully set forth herein.

13       133.   Plaintiff Tyler Walter brings this cause of action against Defendants as the

14   cause of action survives his death under CCP §377.20 and is brought on his behalf by his

15   successor in interest, Lisa Walter, under CCP §377.30.

16       134.   Lisa Walter is Tyler's natural mother whose parental rights were never

17   terminated and is a rightful heir under CCP §377.60(a) and Probate Code §6402(b) and

18   §6450(a). She may bring this survival action on behalf of Tyler as his successor in

19   interest.

20       135.   Defendants County, Durham, Manno, and Castillo, and DOES 1-50,

21   violated and/or breached mandatory and non-delegable duties. This includes, but is not

22   limited to, those set forth in regulations in the California Department of Social Services

23   (CDSS) Manual of Policies and Procedures (MPP) established pursuant to Welfare &

24   Institutions Code Section 16501, and set forth in the California Penal Code.

25       136.   The specific regulations and laws violated by Defendants County, Durham,

26   Manno, and Castillo, and DOES 1-50, include, but are not limited to the following:

27       a.      Cal. Welf. & Inst. Code, §361.4 and CDSS MPP Regulations 31-405,

28

---

**COMPLAINT FOR DAMAGES**
                                                                                    27

EXHIBIT A

1    31-420, and 31-445, by failing to fulfill a social worker's responsibilities for

2    placement.

3    b.    Cal. Welf. & Inst. Code, §361.3 and CDSS MPP Regulations 31-405.12, by

4    failing to give preferential consideration for placement of the child to an

5    adult who is a grandparent, aunt, uncle or sibling of the child.

6    c.    CDSS MPP Regulations 31-320 and 31-330, by failing to adequately

7    conduct face-to-face contacts with Plaintiff.

8    d.    CDSS MPP Regulations 31-501, by failing to report and/or

9    investigate reports of neglect and/or abuse of Plaintiff.

10    e.    Cal. Welf. & Inst. Code, §16000 and CDSS MPP Regulations 31-505, by

11    failing to provide adequate supervision, adequate services, and

12    continued case plan updates for an out-of-county placement.

13    f.    CDSS MPP Regulations 31-310, 31-445(i) and 31-405.22, by failing to

14    monitor Plaintiff's physical and emotional condition, and failing to take

15    necessary actions to safeguard the Plaintiff's growth and development while

16    in Genevieve Walter's placement.

17    g.    Cal. Welf. & Inst. Code, §369, by failing to notify Lisa that Tyler was

18    and/or would be receiving medical care.

19    137.   Defendants County, Durham, Manno, and Castillo, and DOES 1-50,

20 breached their mandatory duties, as set forth above, from July 2018 through September

21 2018, and when Defendants were required to meet certain pre-placement evaluation and

22 approval duties.

23    138.   If Defendants County, Durham, Manno, and Castillo, and DOES 1-50

24 performed their mandatory duties, they would have discovered, and/or properly

25 responded to, evidence that Plaintiff was residing in an unsafe environment without the

26 proper medical and/or health services, and that Plaintiff was likely to be, and was,

27 subjected to neglect and mistreatment. Defendants County, Durham, Manno, and

28 Castillo, and DOES 1-50 were obligated to take measures to protect Plaintiff and/or to

EXHIBIT A

remove Plaintiff from any unsafe placement. Defendants failed to protect Plaintiff, resulting in his death.

139.   As a proximate result of Defendants' failure to fulfill their mandatory duties, Plaintiff suffered, resulting in his death.

140.   Defendants County, Durham, Manno, and Castillo, and DOES 1-50 assumed duties to oversee, monitor and regulate the conduct of their co-Defendants. Plaintiff relied upon Defendants to fulfill these duties, thereby establishing a special relationship between Plaintiff and Defendants.

141.   As a direct and proximate result of these Defendants' misconduct, Plaintiff has suffered, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish and death.

142.   The individual Defendants' malicious, despicable, and/or wrongful conduct as herein alleged was intentional, done with malice, and/or with a conscious disregard for Plaintiff's rights, and as a result of this conduct, and under CCP §377.34, Plaintiff is entitled to recover punitive damages according to proof at trial – against the individual defendants only.

### Count 2
#### (CCP §815.2; 815.6; 820)

**By Plaintiff Lisa Walter Against**
**Defendants County, Fanita Durham, Katherine Manno, Melissa Castillo, and DOES 1 through 50**

143.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

144.   Defendants County, Durham, Manno, and Castillo, and DOES 1-50, violated and/or breached mandatory and non-delegable duties. This includes, but is not limited to, those set forth in regulations in the California Department of Social Services (CDSS) Manual of Policies and Procedures (MPP) established pursuant to Welfare & Institutions Code Section 16501, and set forth in the California Penal Code.

**COMPLAINT FOR DAMAGES**

29

EXHIBIT A

145. The specific regulations and laws violated by Defendants County, Durham, Manno, and Castillo, and DOES 1-50, include, but are not limited to the following:

    a.    Cal. Welf. & Inst. Code, §361.4 and CDSS MPP Regulations 31-405, 31-420, and 31-445, by failing to fulfill a social worker's responsibilities for placement.

    b.    Cal. Welf. & Inst. Code, §16501.1 and CDSS MPP Regulations 31-505, by failing to provide adequate supervision, adequate services, and continued case plan updates for an out-of-county placement.

    c.    Cal. Welf. & Inst. Code, §16000 and CDSS MPP Regulations 31-301, by failing to provide services consistent with the case plan goals.

    d.    CDSS MPP Regulations 31-340(2), by failing to arrange for visits between child and the parent(s)/guardian(s) named in the case plan no less frequently than once each calendar month for children receiving family reunification services.

    e.    CDSS MPP Regulations 31-410.7-.76, by failing to consider the ease of accessibility for visitation and the appropriateness of the placement when placing Tyler in an out-of-county daycare facility with a 19-year-old relative.

146. Defendants County, Durham, Manno, and Castillo, and DOES 1-50, breached their mandatory duties, as set forth above, from July 2018 through September 2018, and when Defendants were required to meet certain pre-placement evaluation and approval duties, as well as providing adequate services to allow Lisa to reunify with Tyler and avoiding unfairly obstructing Lisa's ability to pursue those services.

147. If Defendants County, Durham, Manno, and Castillo, and DOES 1-50 performed their mandatory duties, Lisa would have been able to both pursue her reunification services and simultaneously have adequate time to visit and nurture a continuing relationship with Tyler. But, Defendants instead placed Tyler out-of-county

EXHIBIT A

with a 19-year-old in a daycare facility. Defendants County, Durham, Manno, and Castillo, and DOES 1-50 were obligated to take measures to allow Lisa an adequate opportunity to reunify with Tyler and/or to provide services to allow for such reunification. As a result, Lisa never reunified with Tyler and he died in Long Beach, having not seen his mother for over a month.

148.  Defendant Durham's conduct was especially egregious, failing to maintain any regular contact with both Lisa and Genevieve and failing to respond to inquires from Lisa and/or Genevieve. Durham was incredibly rude to Lisa and told Lisa that she would also not refer Lisa to any programs or services, in spite of her obligation to do so. Durham directed Lisa that she was on her own to obtain the services necessary to reunite with her toddler, Tyler.

149.  Durham and Manno also directly interfered with Lisa's reunification services by placing Tyler in an out-of-county placement when a valid in-county placement was available. Defendants' deliberate action severely hindered Lisa's ability to schedule necessary visitation and meet her mandatory local reunification service requirements. Despite this, Defendants coerced Lisa into this placement, under threat of placing Tyler in foster care.

150.  Durham and Manno also directly interfered with Lisa's reunification services when they scheduled and abruptly cancelled a meeting. These actions were done even though Defendants knew the date and time of their scheduled meeting directly interfered with one of Lisa's reunification programs.

151.  As a direct and proximate result of the acts and omissions of Defendants, and each of them, as detailed above, Plaintiff suffered general and special damages in an amount according to proof at trial.

152.  The individual Defendants' malicious, despicable, and/or wrongful conduct as herein alleged was intentional, done with malice, and/or with a conscious disregard for Plaintiff's rights, and as a result of this conduct, Plaintiff is entitled to recover punitive damages according to proof at trial – against the individual defendants only.

## FOURTH CAUSE OF ACTION

### *(42 U.S.C. § 1983 - Familial Association)*

### <u>Count 1</u>
*(Warrantless Seizure - Fourth Amendment)*
*(CCP §335.1; 377.20; 377.30; 42 U.S.C. §1983)*

**By Plaintiff Tyler Walter, Through His Successor In Interest Lisa Walter, Against Defendants Melinda Eichenberg, Joanna Kientz, and DOES 1 through 50**

153.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

154.   Plaintiff Tyler brings this cause of action against Defendants as the cause of action survives his death under CCP §377.20 and is brought on his behalf by his successor in interest, Lisa Walter, under CCP §377.30.

155.   Lisa Walter is Tyler's natural mother whose parental rights were never terminated and is a rightful heir under CCP §377.60(a) and Probate Code §6402(b) and §6450(a). She may bring this survival action on behalf of Tyler as his successor in interest.

156.   Defendants Eichenberg and Kientz, and each of them, at all relevant times herein were acting under color of law when they jointly acted, or knew and agreed and thereby conspired, to violate Plaintiff's constitutional rights by, but not limited to, removing, detaining, and continuing to detain Tyler from the care, custody, and control of his mother and grandmother, without proper or just cause and/or authority, in the absence of any exigency, and without first obtaining a warrant or other court order.

157.   At all times relevant herein, the right to familial association guaranteed under the First, Fourth, and Fourteenth Amendments to the United States Constitution was so "clearly established" that any reasonable government agent in Defendants' situation would know it is unlawful to seize a child from the care, custody, and control of his mother in the absence of exigent circumstances without first obtaining a warrant to do so. Furthermore, any reasonable government official would know that to do so would

EXHIBIT A

constitute a violation of the parent's well- elaborated constitutional right to live together without undue governmental interference.

158.   HHSA had no evidence that Tyler was at an immediate risk of physical harm while in Lisa's care. The use of drugs, by itself, does not show that a child is at risk of harm. (*In re Rebecca C.* (2014) 228 Cal. App. 4th 720, 728, 175 Cal. Rptr. 3d 264, 269.) Indeed, when the San Diego Sheriff's Department first confronted Lisa, she was with Tyler and he was happy and healthy.

159.   Moreover, Lisa exercised her right to arrange for Tyler to be cared for by Ruth Walter during the period of her incarceration. Indeed, when Defendants took her son, Lisa specifically protested and asked why Tyler could not stay with Ruth. Defendants were required to leave Tyler with his grandmother, as Lisa requested in the absence of any exigent circumstance, during Lisa's incarceration. (*In re S. D.* (2002) 99 Cal. App. 4th 1068, 1077; *Fredenburg v. County of Santa Clara* (9th Cir. 2010) 407 Fed. Appx. 114, 115-116.)

160.   None of the Defendants sought, or obtained any type of warrant or court order, prior to seizing Tyler. Defendants, and each of them, jointly acted or conspired to seize the child, as described above, knowing that no warrant authorizing the child's seizure issued and that exigent circumstances did not exist. They also knew that neither parent consented to Tyler's unwarranted seizure.

161.   There was no evidence or even allegations that Lisa Walter had physically abused or harmed Tyler in any way. There was no evidence or allegations that Ruth Walter had physically abused or harmed Tyler in any way. There was no evidence that Tyler was in immediate danger of suffering serious bodily injury at the hands of either his mother or grandmother.

162.   At no time *ever* did any of the Defendants have any specific, articulable evidence to support any reasonable basis to believe that Tyler was in immediate danger of sustaining serious bodily injury or death at the hands of either Lisa or Ruth Walter. The conduct of these Defendants, and each of them, was in knowing and/or reckless

violation of Plaintiff's clearly established rights.

163.   At no point did Defendants Eichenberg and Kientz even bother to seek a warrant prior to seizing Tyler. Instead, Defendants, and each of them, intentionally, or with a reckless or malicious disregard for Plaintiffs' known rights, seized Tyler from his mother's care. At the time of the seizure, there was no specific or articulable evidence to show that Tyler was in any danger at the hands of either his mother or grandmother. Moreover, even if such a danger had existed, there were ample lesser intrusive alternative means of protecting the child – and Defendants knew it.

164.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered general and special damages according to proof at trial, including but not limited to, physical injury, including death, physical and/or mental anxiety, emotional distress, among other things.

165.   Due to Defendants' knowing violation of Plaintiff's rights, and under CCP §377.34, Plaintiff is entitled to recover, and shall seek, punitive damages against the individual Defendants, and each of them, subject to proof at trial.

### Count 2
*(Warrantless Seizure – Fourteenth Amendment)*
*(42 U.S.C. §1983)*

**By Plaintiff Lisa Walter Against
Defendants Melinda Eichenberg, Joanna Kientz,
and DOES 1 through 50**

166.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

167.   Plaintiff specifically re-alleges and restates ¶¶156-163 as though fully set forth herein in support of her own warrantless seizure claim.

168.   As a direct and proximate result of Defendants' actions, Lisa has suffered, and will continue to suffer, physical, mental and emotional injury, all to an extent and in an amount subject to proof at trial. Lisa has also incurred, and will continue to incur, attorney fees, costs and expenses, including those authorized by 42 U.S.C. §1988, to an

extent and in an amount subject to proof at trial.

169.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the specific intent to cause injury to Lisa, or acted with a willful, knowing, and conscious disregard for Lisa's rights. Therefore, Lisa is entitled to an award of punitive damages for the purpose of punishing these Defendants, and each of them, in order to deter them, and others, from such conduct in the future.

### Count 3
***(Failure to Notify - Medical Procedures – Fourteenth Amendment)***
***(42 U.S.C. §1983)***

**By Plaintiff Lisa Walter Against**
**Defendants Fanita Durham, Katherine Manno,**
**and DOES 1 through 50**

170.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

171.   Less than a day after Tyler was seized, he was injured in foster care, requiring a trip to Rady Children's Hospital. Defendants Durham and Manno did not notify Lisa of Tyler's injury nor did they ask her for input regarding treatment and/or vaccinations.

172.   Since *Wallis v. Spencer* (9th Cir. 2000) 202 F.3d 1126, the Ninth Circuit has held the Fourteenth Amendment right to family association includes the right of children to have important medical decisions made by their parents, rather than the state. *Mann v. Cty. of San Diego* (9th Cir. 2018) 907 F.3d 1154 solidifies and circumscribes the extremely narrow scope of permissible government conduct in the context of the medical examination and/or treatment of children. (*Mann, supra*, 907 F.3d at 1160-1161, 1167; *Wallis, supra*, 202 F.3d at 1141.) Defendants Durham and Manno would or reasonably should have known that Lisa was required to be contacted regarding any medical procedures or examinations involving Tyler.

173.   These rights are undisturbed during the County's temporary custody of a

---

**COMPLAINT FOR DAMAGES**

35

EXHIBIT A

child. (*Mann, supra*, 907 F.3d at 1165; *Wallis, supra*, 202 F.3d at 1134-1135 and 1141; *Swartwood v. County of San Diego* (S.D. Cal. 2014) 84 F. Supp. 3d 1093, 1101.) Indeed, *Mann*, *Wallis*, and *Swartwood* all occurred in San Diego County. Defendants knew of their obligation and failed to even inform Lisa that Tyler had been injured. Lisa would learn of the injury from Genevieve.

174.   At no point did Defendants Durham and Manno even bother to seek a warrant prior to Tyler being vaccinated. Instead, Defendants, and each of them, intentionally, or with a reckless or malicious disregard for Plaintiffs' known rights, failed to notify Lisa about Tyler's injury that required a trip to the hospital. At the time of the examination and procedures, no attempt was made to obtain Lisa's consent. Defendants Durham and Manno did not place this information in the Detention Report filed after Tyler's injury. Indeed, Lisa would not even find out her child had been injured for several weeks.

175.   Due to Defendants' knowing violation of Plaintiff's rights, and under CCP §377.34, Plaintiff is entitled to recover, and shall seek, punitive damages against the individual Defendants, and each of them, subject to proof at trial.

## FIFTH CAUSE OF ACTION

**(*Failure to Provide Minimally Adequate Care and Ensure the Continued Safety and Security, i.e., Protect From Harm*)**
**(*CCP §335.1; 377.20; 377.30; 42 U.S.C. §1983*)**

**By Plaintiff Tyler Walter, Through His Successor In Interest Lisa Walter, Against Defendants Fanita Durham, Katherine Manno, Melissa Castillo and DOES 1 through 50**

176.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

177.   Plaintiff Tyler brings this cause of action against Defendants as the cause of action survives his death under CCP §377.20 and is brought on his behalf by his successor in interest, Lisa Walter, under CCP §377.30.

178.   Lisa Walter is Tyler's natural mother whose parental rights were never

terminated and is a rightful heir under CCP §377.60(a) and Probate Code §6402(b) and §6450(a). She may bring this survival action on behalf of Tyler as his successor in interest.

179.   Once a child is taken into custody, the Fourteenth Amendment protects a foster child's interest in social worker supervision and protection from harm. (*Tamas v. Dep't of Soc. & Health Servs.* (9th Cir. 2010) 630 F.3d 833, 842- 843.) That is, once the government assumes custody and care of a child, it owes that child reasonable safety and minimally adequate care.

180.   Tyler held protected liberty interests in being shielded from harm inflicted in foster care and enjoyed a special relationship with the County – once HHSA assumed Tyler's custody and care.

181.   By failing to follow up, investigate, intervene, or provide services to Genevieve and Tyler, while simultaneously concealing the change in living arrangements from both the Juvenile Court and Lisa Walter, Defendants acted in deliberate indifference to Tyler's safety, resulting in his death.

182.   The HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50, and each of them, knew, or with the exercise of reasonable care should have known, that Tyler was a vulnerable minor due to his young age and required adequate supervision, monitoring, and health services. Despite this, the HHSA, Defendants Durham, Manno, and Castillo, and DOES 1-50: (1) failed to reasonably and/or adequately place Tyler, (2) failed to adequately supervise Tyler after being placed in the care of 19-year-old Genevieve Walter, (3) allowed Tyler to remain in Genevieve's care even after his health showed symptoms of declining, (4) failed to provide necessary health insurance and/or medical services for Tyler, over the course of several months and/or (5) failed to keep Lisa and the Juvenile Court apprised of Tyler's condition while in placement. This conduct paved the way for Tyler's wrongful death while in the County's "care."

183.   Tyler would not have faced physical injury and/or illness resulting in his death if the HHSA Defendants Durham, Manno, and Castillo, and DOES 1-50, and each

1    of them, had provided adequate supervision and services.

2          184.   As a direct and proximate result of Defendants' conduct, Tyler's rights

3    arising under the Fourteenth Amendment were violated; and, Plaintiff suffered damages

4    thereby, as according to proof at trial.

5          185.   Defendants Fanita Durham, Katherine Manno, and Melissa Castillo's

6    conduct as herein alleged was intentional and/or with a conscious disregard for Tyler's

7    rights. As a result, Plaintiff is entitled to recover punitive damages.

### SIXTH CAUSE OF ACTION

#### (*Monell Related* Claims)

##### Count 1

**(*Failure to Provide Minimally Adequate Care and Ensure the Continued Safety and Security, i.e., Protect From Harm*)**
**(CCP §377.20; 377.30; 42 U.S.C. §1983)**

**By Plaintiff Tyler Walter. Through His Successor In Interest Lisa Walter, Against Defendant County of San Diego**

14          186.   Plaintiff hereby incorporates by reference and re-alleges each and every

15    allegation set forth in each and every preceding paragraph of this Complaint, as though

16    fully set forth herein.

17          187.   Plaintiff Tyler Walter brings this cause of action against Defendants as the

18    cause of action survives his death under CCP §377.20 and is brought on his behalf by his

19    successor in interest, Lisa Walter, under CCP §377.30.

20          188.   Lisa Walter is Tyler's natural mother whose parental rights were never

21    terminated and is a rightful heir under CCP §377.60(a) and Probate Code §6402(b) and

22    §6450(a). She may bring this survival action on behalf of Tyler as his successor in

23    interest.

24          189.   The County and HHSA had a duty to implement and follow policies,

25    customs, and/or practices which confirm and provide the protections guaranteed under

26    the United States Constitution and under federal law. The County had a duty to use

27    reasonable care to train, supervise, and/or control its agents, so as to protect these

28

---

EXHIBIT A

1  constitutional and statutory rights.

2  190.   Based on the duties charged to its social workers, including the duty to

3  protect a child under its custody and supervision, the County knew or should have

4  known of the need to establish customs required to protect the civil rights of children

5  with whom their agents regularly came into contact – and to adequately train its social

6  workers.

7  191.   The County has refused to admit that its social workers commit a

8  constitutional violation when they fail to protect a child – under their supervision – from

9  harm, and failing to ensure Tyler's reasonable safety and minimally adequate care. The

10  County denies that the Defendants violated Tyler's constitutional rights. The County

11  ratified and/or approved of the Defendants' conduct involving Tyler

12  192.   At the time of the underlying events, the County's customs and practices

13  included, but were not limited to:

14  a.   Not providing parents with information regarding their child's current living

15      conditions.

16  b.   Not requiring a social worker to perform regular updates regarding a child's

17      living conditions.

18  c.   Not requiring a social worker to regularly monitor, visit, interview, and/or

19      checkup on a child in foster placement.

20  d.   Allowing social workers to forgo regular reporting and/or continuing to

21      evaluate the appropriateness of a placement.

22  e.   Not informing the Juvenile Court of significant changes in a dependent

23      child's living conditions and/or environment.

24  f.   Ignoring a parent's requests for more information regarding a child's

25      placement and updates as to that child's health and safety.

26  g.   Not allowing parents the immediate opportunity to assess and re-

27      evaluate their child's placement once a foster parent becomes homeless.

28  h.   Not allowing parents the immediate opportunity to assess and re-evaluate

**COMPLAINT FOR DAMAGES**

EXHIBIT A

their child's placement once a foster parent is living out of their car.

i.  Not providing adequate medical services and/or health insurance to a dependent child.

193.  The County did not investigate or discipline the Defendants, for failing to protect Tyler from and failing to ensure Tyler's reasonable safety and minimally adequate care.

194.  The County failed to train its social workers and agents on the constitutional rights of a parent and child, including but not limited to:

a.  That the Fourteenth Amendment protects a foster child's interest in social worker supervision and protection from harm inflicted in the foster home.

b.  That once HHSA assumes custody and care of a child, it owes that child reasonable safety and minimally adequate care.

195.  The County's failure to train its agents on these established constitutional rights was a substantial factor in causing Tyler's harm. Without adequate training, Defendants were unfamiliar with and oblivious to Tyler's rights.

196.  Indeed, the San Diego County Grand Jury recently released its findings, indicating that the County of San Diego only completes 58% of its required monthly caseworker visits, well below the state average of 75%. (*See* Exhibit A, p. 10.)

197.  Of the approximately 2,100 children in foster care in the County of San Diego, 20% of group home children were reported to be abused in their foster home. (*See* Exhibit A, p. 12, Finding 03.) Most complaints involved physical abuse and/or neglect. (*Ibid.*)

198.  This has resulted in 985 instances of substantiated maltreatment of children in San Diego County foster care from April 2008 to May 2018. (*See* Exhibit A, p. 1.)

199.  Indeed, the County of San Diego regularly allows children to be harmed in its foster care system. These systemic failures have resulted in several articles highlighting this important issue. And, several cases against multiple offending social

**COMPLAINT FOR DAMAGES**

40

EXHIBIT A

1   workers (for failing to protect children) and the County (for its customs being the
2   moving force behind these violations). These include, but are not limited to, the
3   following: **(1)** *A.G. v. County of San Diego*, Case No. 16-cv- 02290-AJB-KSC, **(2)**
4   *Garcia v. County of San Diego*, Case No. 3:15-cv-00189- JLS-NLS, **(3)** *Cabelka v.*
5   *County of San Diego*, Case No. 18-cv-00013-WQH- MSB, **(4)** *T.T. v. County of San*
6   *Diego*, Case No. 19-cv-00407-AJB-KSC; **(5)** *Greenspan v. County of San Diego*, Case
7   No. 3:13-cv-00210-LAB-DHB.

8       200.    The County knew or should have known that a child has right to social
9   worker supervision and protection from harm inflicted while in foster care, and is
10  entitled to reasonable safety and minimally adequate care. But, the County knowingly
11  refrained from (1) revising and/or implementing relevant policies, and (2) training it
12  social workers that a child must be protected from harm.

13      201.    These actions, and/or inactions, of the County were the moving force
14  behind the Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has sustained
15  general and special damages, in an amount to be proven at trial.

16                          **Count 2**
                        *(Warrantless Seizures)*
17              *(CCP §377.20; 377.30; 42 U.S.C. §1983)*

18  **By Plaintiff Tyler Walter, Through His Successor In Interest Lisa Walter, Against**
                    **Defendant County of San Diego**
19
20      202.    Plaintiff hereby incorporates by reference and re-alleges each and every
    allegation set forth in each and every preceding paragraph of this Complaint, as though
21  fully set forth herein.
22
23      203.    Plaintiff Tyler brings this cause of action against Defendants as the cause of
    action survives his death under CCP §377.20 and is brought on his behalf by his
24  successor in interest, Lisa Walter, under CCP §377.30.
25
        204.    Lisa Walter is Tyler's natural mother whose parental rights were never
26  terminated and is a rightful heir under CCP §377.60(a) and Probate Code §6402(b) and
27  §6450(a). She may bring this survival action on behalf of Tyler as his successor in
28

                    **COMPLAINT FOR DAMAGES**
                                                                    41

                            EXHIBIT A

1  interest.

2      205.  The County and HHSA had a duty to implement and follow policies,
3  customs, and/or practices which confirm and provide the protections guaranteed under
4  the United States Constitution and under federal law. The County had a duty to use
5  reasonable care to train, supervise, and/or control its agents, so as to protect these
6  constitutional and statutory rights.

7      206.  Defendant County of San Diego, including through its entity HHSA, and
8  those individuals in their official capacity who had supervisory and/or policy making
9  authority, had a duty to Plaintiff to establish, implement and follow policies, procedures,
10 customs and/or practices which confirm and provide the protections guaranteed Plaintiff
11 under the United States Constitution, including those under the First, Fourth, and
12 Fourteenth Amendments. This includes, without limitation, the protection of the right to
13 familial relations; the right to privacy; and the rights to substantive and procedural due
14 process.

15     207.  Defendant County of San Diego also had a duty to use reasonable care to
16 select, assign, supervise, train, control and review the activities of all their agents,
17 officers, employees and those acting under them, including within HHSA, so as to
18 protect these constitutional rights; and to refrain from acting with deliberate indifference
19 to the constitutional rights of Plaintiffs in order to avoid causing the injuries and
20 damages alleged herein.

21     208.  Moreover, based on the duties charged to HHSA and its social workers,
22 including the powers to seize children from their parents' care, the County and its
23 policymaking officials knew or should have known of the need to establish customs,
24 policies, and practices required to protect the aforementioned civil rights of parents and
25 their children with whom their agents regularly came into contact – and to adequately
26 train its employees on constitutionally appropriate policies and practices.

27     209.  At the time of the underlying events, the County's customs relating to
28 the removal of a child from its parent's custody included, but were not limited to:

**COMPLAINT FOR DAMAGES**

EXHIBIT A

a.    The custom of seizing children from their parent's custody without consent, court order, and in the absence of exigent circumstances (*i.e.*, imminent danger of serious bodily injury).

b.    The custom of seizing children from their parent's custody without first performing a reasonable investigation.

c.    The custom of automatically seizing children from their parent's custody based on incarceration alone instead of allowing that parent their legal right to make alternate arrangements for her child's care.

d.    The custom of automatically seizing children from their parent's custody without a court order based on drug use alone when there is no showing that the child was ever in any immediate danger.

e.    The custom of seizing a child instead of placing the child with a qualified relative.

f.    The custom of seizing a child without first exploring lesser intrusive alternative means to seizure.

210.    When Defendants Eichenberg and Kientz seized Tyler from Lisa's custody, they were acting pursuant to and in accordance with the County's child removal customs. Tyler's seizure had supervisor approval.

211.    Tyler's warrantless seizure was not an isolated incident. Instead, County social workers regularly seize children from their parent's custody without consent, court order, and/or exigency – as is the customary practice at HHSA. These unlawful seizures have resulted in several lawsuits against multiple offending social workers (for violation of constitutional rights) and the County (for its customs being the moving force behind these violations). These include, but are not limited to, the following: **(1)** *Blinn v. County of San Diego*, State Case No. GIC738339, **(2)** *Parkes v. County of San Diego*, 345 F. Supp. 2d 1071 (S.D. Cal. 2004), **(3)** *Petersen v. County of San Diego*, State Case No. 37-2009-00058159, **(4)** *Anderson v. County of San Diego*, 2011 U.S. Dist. LEXIS 33379 (S.D. Cal. 2011), **(5)** *Artea Dunn v. County of San Diego*, Case No.

1    13-CV-0209-JAH-KSC, **(6)** *Donna Greenspan v. County of San Diego*, Case No. 13-CV-

2    00210-LAB-DHB, **(7)** *Michael Lewis v. County of San Diego*, Case No.

3    13-cv-2818-L-JMA, **(8)** *Mann v. County of San Diego*, 2013 U.S. Dist. LEXIS 112094

4    (S.D. Cal. 2013), **(9)** *Swartwood v. County of San Diego*, 84 F. Supp. 3d 1093, **(10)**

5    *Reynolds v. County of San Diego*, Case No. 3:11-cv-01256-JAH-RBB, **(11)** *McManus v.*

6    *County of San Diego*, Case No. 15-cv-00138-JM-RBB, **(12)** *A.G. v. County of San*

7    *Diego*, Case No. 16-cv-02290-AJB-KSC, **(13)** *Garcia v. County of San Diego*, Case No.

8    3:15-cv-00189-JLS-NLS.

9        212.   The County never investigates or disciplines its social workers (including

10   those named as Defendants in the lawsuits identified above) who seize children from

11   their parents' custody without consent, court order, and/or in the absence of exigency.

12   The County did not investigate or discipline Defendants Eichenberg and Kientz for

13   seizing Tyler from his mother's custody without consent, court order, and/or in the

14   absence of exigency.

15       213.   The County has refused to admit that its social workers commit a

16   constitutional violation when they seize a child from his or her parent's custody without

17   consent, court order, and in the absence of exigency – and continues to do so. The

18   County denies that Defendants Eichenberg and Kientz violated Tyler's rights when he

19   was seized without consent, court order, and/or exigency. The County ratified and/or

20   approved of Defendants Eichenberg and Kientz's warrantless seizure of Tyler.

21       214.   The County failed to train its social workers and agents on the constitutional

22   rights of a parent and child, including but not limited to:

23       a.      The circumstances under which a court order must be obtained prior

24                to removing a child from the custody of its parent(s).

25       b.      The fact that a court order or parental consent must be obtained prior

26                to removing a child from the custody of its parent(s), when there was no

27                exigency.

28

c.   That a child cannot be removed without a court order or parental consent, unless there is "specific, articulable evidence" that a child is in imminent danger of suffering serious bodily injury.

d.   That a parent must be provided the opportunity to arrange for the continued care of a child when he or she is incarcerated.

e.   That a social worker must consider all reasonable alternative means prior to seizure before seizing a child without a court order or parental consent.

f.   That a social worker cannot automatically seize children from their parent's custody without a court order based on drug use alone when there is no showing that the child was ever in any immediate danger.

g.   That a social worker should not seize a child when there is a relative immediately able and willing to care for the child.

215.   The County's failure to train its agents on these established constitutional rights was a substantial factor in causing Tyler's harm. Without adequate training, Defendants Eichenberg and Kientz were unfamiliar with and oblivious to Tyler's rights, when he was seized – without consent, court order, or exigency.

216.   The County knew or should have known that a parent and child cannot be separated without consent, court order, and/or exigency. But, the County knowingly refrained from (1) revising and/or implementing child removal customs, and (2) training it social workers that a child cannot be removed without consent, court order, and/or exigency. In addition, the County refused to investigate or discipline its social workers for removing a child without consent, court order, and/or exigency.

217.   These actions, and/or inactions, of the County were the moving force behind the Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, in an amount to be proven at trial.

///

///

## SEVENTH CAUSE OF ACTION

### (*Intentional Infliction of Emotional Distress*)

**By Plaintiff Lisa Walter Against**
**Defendants County, Fanita Durham, Katherine Manno, Melissa Castillo,**
**and DOES 1 through 50**

218.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

219.   The conduct of the individual Defendants, and each of them, was extreme and outrageous in that they abused their position of authority and their relationship with Plaintiff. The relationship between Lisa and the individual Defendants was such that the individual Defendants, and each of them had real, or apparent, power to affect all of the Plaintiffs' interests.

220.   At all relevant times after Tyler's placement with Genevieve Walter, Defendants, and each of them, subjectively knew that Plaintiff was particularly vulnerable to emotional distress. Moreover, Defendants, and each of them, knew that their conduct would likely result in physical and/or emotional harm due to mental distress, among other things.

221.   Plaintiff suffered the severe and obvious emotional distress that results from the death of one's child. To this day, Plaintiff requires counseling and treatment to even cope with this tragic loss.

222.   Defendants' conduct in failing to adequately monitor and supervise Tyler while he was in the County's care was outrageous. Defendants coerced Lisa into placing her only son with 19-year-old Genevieve, who was unequipped to handle an infant. Then, after coercing Lisa, Defendants failed to provide necessary health services to ensure Tyler received necessary medical care. As Tyler was too young to care for himself, Defendants' multiple repeated failures led, inevitably, to the decline in health and Tyler passing away.

223.   Defendants, as part of their duties and responsibilities, knew, or reasonably should have known, that adequate services, monitoring, and supervision were absolutely necessary.

224.   Defendants, and each of them, acted with reckless disregard of the probability that Plaintiff would suffer emotional distress in that they gave little or no thought to the probable effects of their conduct; and, as a direct and proximate result of Defendants' conduct, Plaintiff did suffer severe emotional distress. The conduct of Defendants, and each of them was a substantial factor in causing the severe emotional distress suffered by Plaintiff.

225.   Defendant County is liable for all injuries proximately caused by an act or omission of the individual Defendants, who at all relevant times were acting within the course and scope of their duties as employees of County. Thus, County is vicariously responsible, and liable, for all damages naturally flowing from the misconduct of the individual Defendants in an amount according to proof at trial.

226.   As a direct and proximate result of these Defendants' misconduct, Plaintiff has suffered, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish.

227.   The acts and omissions of the individual Defendants, and each of them, as herein alleged were intentional and/or done with a conscious disregard for Plaintiffs' rights.

228.   Because the individual Defendants acted with a wanton and reckless disregard of Plaintiff's obvious and known rights, Plaintiff is entitled to recover punitive damages against the individual Defendants as according to proof at trial. Plaintiffs expressly make no claim for punitive damages against County.

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

EXHIBIT A

# EIGHTH CAUSE OF ACTION

## (42 U.S.C. § 1983 - First Amendment Retaliation)

### By Plaintiff Lisa Walter Against
### Defendants Fanita Durham, Katherine Manno, and DOES 1 through 50

229.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

230.   Plaintiff is informed and believes and thereon alleges that the right to speak out against government officials involved in juvenile dependency investigations is so clearly established that any, and every, government agent Defendants' situation would know it is a violation of a parents' constitutionally protected rights to retaliate against them in any way for speaking out.

231.   The actions of Defendants Durham and/or DOES 1-50, as alleged herein above, were undertaken with a known and deliberate indifference to Lisa's rights, and/or with the specific intention of harming Lisa.

232.   Defendant Durham specifically and unduly restricted Lisa's ability to visit with Tyler by placing him in a remote location, knowing that Lisa had no reliable means of transportation or ability to travel for visits. Durham relocated Tyler after Lisa complained to Durham that she was not receiving the services she was entitled to from the County.

233.   Defendants Durham and Manno further hindered Lisa's ability to complete the services that Lisa was able to independently acquire. Defendants did this because Lisa had complained regarding Tyler's placement and the lack of services being provided to her. Moreover, Durham had a specific animus towards Lisa because Lisa had previously used drugs. Durham spoke with an openly hostile tone towards Lisa and was regularly rude to, and dismissive of, Lisa.

234.   By engaging in the retaliatory conduct alleged herein, Defendants, and each of them, interfered and/or attempted to interfere with Lisa's constitutional right to

EXHIBIT A

familial association under the Fourteenth Amendment and her right of free speech and to seek redress under the First Amendment.

235.   As a direct and proximate result of Defendants' actions, Lisa has suffered, and will continue to suffer, physical, mental and emotional injury, all to an extent and in an amount subject to proof at trial. Lisa has also incurred, and will continue to incur, attorney fees, costs and expenses, including those authorized by 42 U.S.C. §1988, to an extent and in an amount subject to proof at trial.

236.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the specific intent to cause injury to Lisa, or acted with a willful, knowing, and conscious disregard for Lisa's rights in a despicable, vile and contemptible manner. Therefore, Lisa is entitled to an award of punitive damages for the purpose of punishing these Defendants, and each of them, in order to deter them, and others, from such conduct in the future.

### NINTH CAUSE OF ACTION

*(Negligence/Negligence Per Se - Usurpation of Infant's Remains)*

**By Plaintiff Lisa Walter Against**
**Defendants County, Fanita Durham, Katherine Manno, Melissa Castillo, and DOES 1 through 50**

237.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

238.   Defendants, and each of them, unlawfully seized/detained the care, custody, and control of Tyler's remains from Lisa. The County wholly prevented a grieving mother from making those fundamental decisions on how to arrange for her infant son's funeral and disposition of his remains.

239.   By doing so, Defendants, and each of them, took upon themselves a duty owed to Tyler's bereaved mother. This was an affirmative duty to avoid further harm to his mother, Lisa Walter, in disposing of Tyler's remains.

///

---

**COMPLAINT FOR DAMAGES**

EXHIBIT A

240.   Adding further trauma to this unlawful interference in these fundamental family decisions, Lisa was completely barred from retrieving Tyler's remains in October 2018. Importantly, at no point were Lisa's parental rights ever terminated. But, the County and the individual Defendants refused to relinquish Tyler's body to Lisa. In spite of Lisa's protest, the County relinquished the body to others without any legal authority or just cause.

241.   The County then planned and arranged Tyler's October 20, 2018 funeral, pushing for Tyler's immediate cremation – without any input from Lisa and over her objection. This mishandling of Tyler's remains was a breach of the duty the County owed to Lisa when it *cremated* Tyler against Lisa's express wishes.

242.   Due to the County's wrongful interference, Tyler's funeral was arranged by the very people whose actions led to his death. He was promptly cremated. But, Lisa had wanted Tyler to be buried. Lisa was not even consulted by the County as to the disposition of her son's remains. Indeed, Lisa had to ask for permission to attend her own son's funeral.

243.   Durham and Castillo brazenly attended Tyler's funeral, in direct contravention of Lisa's wishes and objection. According to Defendants, and each of them, Lisa had no say even in who attended her son's funeral or in the disposition of his remains.

244.   Defendants also were *per se* negligent in that California Health and Safety Code §7100 expressly gives "[t]he right to control the disposition of the remains of a deceased person, the location and conditions of interment, and arrangements for funeral goods and services to be provided" to the parent of a deceased child. Defendants' actions violated this statutory provision by barring Lisa from making decisions as to Tyler's remains and by interfering with Tyler's funeral. Defendants' actions, and each of them, violated this statute by unlawfully taking away Lisa's power to make fundamental family decisions.

///

**COMPLAINT FOR DAMAGES**

EXHIBIT A

245.   As a direct and proximate result of these Defendants' misconduct, Plaintiff has suffered, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish and severe emotional distress.

246.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the specific intent to cause injury to Lisa, or acted with a willful, knowing, and conscious disregard for Lisa's rights in a despicable, vile and contemptible manner. Therefore, Lisa is entitled to an award of punitive damages for the purpose of punishing these Defendants, and each of them, in order to deter them, and others, from such conduct in the future.

## JURY DEMAND

Plaintiffs demand a jury trial as to all issues so triable.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, as to all causes of action, as follows:

1.   General damages and special damages according to proof, but in no event less than $5,000,000;

2.   As against the individual defendants, punitive damages as allowed by law;

3.   Attorneys fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

4.   Costs of suit incurred herein; and

5.   Such further relief as the Court deems just and proper.

Dated: October 9, 2019         The Law Offices of Shawn A. McMillan, A.P.C.

Shawn A. McMillan, Esq.
Stephen D. Daner, Esq.
Adrian M. Paris, Esq.
Attorneys for Plaintiffs Tyler and Lisa Walter

**COMPLAINT FOR DAMAGES**

51

EXHIBIT A

# Exhibit A

# Exhibit A

# Exhibit A

EXHIBIT A

# *Promoting Quality Foster Care in San Diego County*
## *Who Protects Our Most Vulnerable Children?*

## EXECUTIVE SUMMARY

As a city, county, state and nation, we have an obligation and precedent to protect and nurture our children. To those who are most vulnerable, our first priority is absolute safety. Anything less destroys our communities, our families and our futures.

The mission of the 2018/2019 San Diego County Grand Jury (Grand Jury) is to "investigate, evaluate and report on the actions of local governments" as well as "enhance our community." With this dictum as guidance, the Grand Jury tried to determine if improvements in San Diego County Child Welfare Services (CWS) procedures and policies reduced abuse by parents, family members, non-relatives and foster parents. According to the California Child Welfare Indicators Project (CCWIP) at UC Berkeley, from April 2008 to May 2018, San Diego County had **985** instances of substantiated maltreatment of children in foster care. [1]

This investigative work included numerous interviews of San Diego County's Health and Human Services, Behavioral Health and CWS staff. In addition, the Grand Jury commissioned a County Audit of CWS's use of mandatory federal and state databases. The auditors examined the agency's varied software programs including those used to determine the risk level of families and future maltreatment.

Finally, the Grand Jury researched how *The Continuum of Care Reform Act* (California Assembly Bill AB 403)[2] impacted the workload of social workers. The Grand Jury looked at the comparison of time spent on administrative tasks versus providing services to children. The Grand Jury investigated social workers' workloads, training, supervisory support, turnover, communication procedures and foster family engagement.

The Grand Jury investigation found that despite many CWS workers' dedication to excellence, serious institutional safety gaps remain. These fissures include:

- Increased administrative demands reducing individual time with a foster child/family
- Deficient coordination and communication between County staff and their regional counterparts
- Absence of training for particular staff and foster parents regarding trauma-informed-care and human trafficking

---

[1] http://cssr.berkeley.edu/ucb_childwelfare/
[2] Assembly Bill 403 "Continuum of Care Reform Act" October 11, 2015. AB 403 is a comprehensive reform effort to make sure that youth in foster care have their day-to-day physical, mental, and emotional needs met; that they have the greatest chance to grow up in permanent and supportive homes; and that they have the opportunity to grow into self-sufficient, successful adults. AB 403 Fact Sheet

1

EXHIBIT A

- Limited County oversight of Foster Family Agency (FFA)[3] social workers
- Lack of system support and training for "burned-out" and overwhelmed staff and social workers

In addition, the Grand Jury found the Child Abuse Hotline workers were not required to differentiate calls from a foster child versus those calls from a mandated reporter or community member.

The Grand Jury recommends that CWS revise training requirements so that *all* staff receive appropriate training for recognizing the maltreatment of children. The Grand Jury also recommends that CWS develop best practices for recruitment, retention and training of social work staff, coordinate information and procedures for FFAs and regional staff, and establish procedures to red flag foster youth who make calls to the Child Abuse Hotline.

## BACKGROUND

The impetus for the Grand Jury study began with a *San Diego Union-Tribune* article of July 22, 2018 regarding the abuse of foster care children by their foster parent over a seven year period. The article by Morgan Cook, *"County failed repeatedly to Stop Sexual Abuse of Foster Children, Lawsuit Alleges"* reported that County social workers had largely ignored signs of sexual abuse by the foster parent over this extended period of time. Lapses included disregarding a dozen reports by an educator, a lawyer, a psychologist and, of course, the foster children regarding suspected abuse by the foster parent. The lawsuit alleged that *"Social workers were not vigilant about monitoring the foster home for signs of trouble, and red flags were not met with swift, aggressive intervention."*[4]

According to the article, the plaintiff alleged numerous complaints from the children to CWS went unheeded. A civil case regarding this matter was settled in the summer of 2018. Two other news articles reported a case of, one, the sexual abuse of foster children by another foster child in the home[5] and, two, the case of a social worker allegedly being "let go" by the County after her numerous complaints about the lack of CWS follow-up regarding child maltreatment in foster care.[6] The aforementioned articles point to patterns of ignoring problematic behaviors of the perpetrators, social workers' lack of follow-up, CWS staff's refusal to take action regarding documented communications with victims and County staff's diminished focus on child safety and minimization of system-induced trauma.

---

[3] www.cdss.ca.gov/inforesources/Foster-Care/Foster-Family-Agencies
[4] *San Diego Union Tribune*: Morgan Cook, *"County Failed Repeatedly to Stop Sexual Abuse of Foster Children, Lawsuit Alleges"* July 22, 2018
[5] *ABC News, San Diego*: Adam Racusin, Maureen Sheeran, "*Child maltreatment in foster care,*" September 26, 2018
[6] *San Diego Union Tribune*: Morgan Cook, *"Lawsuit: Poor supervision of foster homes led to 'super lice' and dental abscesses."* October 10, 2018

2

EXHIBIT A

Numerous sources[7] confirmed to the Grand Jury that childhood abuse has a long-term negative impact on a person's health and well-being. Exposure to violence, family alcohol and drug use, poverty and adversity affect a child's brain structure and function. These adverse childhood experiences (ACE) impact learning, behavior, emotional development and health.[8] An average of 61% of children entering the foster care system test positive for developmental delay[9] compared to a 4-10% incidence in the general population. *"Developmental delays occur at a rate four-to-five times greater than that of children in the general population."*[10]

In addition, CWS employees were required to implement significant operational changes mandated by California Assembly Bill AB 403, the Continuum of Care Reform Act. Enacted in October 2015 and effective in January 2017, AB 403 requires *"significant changes to the placement and care provided to children in foster care, including increasing capacity and support to resource families in California and improving outcomes for children and youth in child welfare systems."*[11] This includes more appropriate care and services for foster children in home-based settings and reduces the time spent in congregate care, or group homes. AB 403 requires investing in recruitment training and retention of foster care homes and changing how and where behavioral health services are provided.

AB 403 was the biggest change to the California foster care system in a generation.

There are currently 2,400 children in foster care in San Diego County. Approximately 43,000 calls, involving about 79,500 children, of suspected abuse come into San Diego's Child Abuse Hotline each year.[12] In fact, on average, 12 children need out-of-home placement each day in San Diego County due to abuse and neglect.[13]

Given the magnitude of the issues raised, including 985 instances of substantiated maltreatment of children in San Diego County foster care from April 2008 to March 2018, the possibility of further safety issues of current foster children in the CWS system, and the major changes created by AB 403 made this a relevant investigation for the Grand Jury.

---

[7] Reports issued by the Grand Jury do not identify individuals interviewed.  California Penal Code §929 requires that reports of the Civil Grand Jury not contain the name of any person or facts leading to the identity of any person who provides information to the Grand Jury.
[8] Centers for Disease Control and Prevention (2016). (*About adverse childhood experiences.*) Shonkoff, J.P. et al. (2012). (*The lifelong effects of early childhood adversity and toxic stress.* Pediatrics, 129(1)
[9] Promises2Kids Facts and Figures, www.promises2kids.org
[10] Fostering Success in Education, page 5, *National Factsheet on the Educational Outcomes of Children in Foster Care, April 2018; National Working Group on Foster Care and Education.*
[11] https://www.cwda.org/budget-priority/2016-17-continuum-care-reform-ab-403-implementation-funding.
[12] County of San Diego Health and Human Services Agency, Adopted Operational Plan Fiscal years 2017-18 and 2018-19.
[13] See footnote 7.

EXHIBIT A

## *METHODOLOGY*

The Grand Jury reviewed academic research, writings by eminent professionals in the field of social services, and national foundations focused on safely reducing the need for foster care. Building on this foundation, the Grand Jury:

- Interviewed staff of the San Diego County Health and Human Services Agency
- Interviewed staff of the San Diego County Child Welfare Services
- Interviewed San Diego County Behavioral Health staff
- Attended, in partnership with the County of San Diego Child Welfare Services, the Foster Family Agency (FFA) Information Forum
- Visited and toured San Pasqual Academy
- Visited and toured A. B. and Jessie Polinsky Children's Center
- Reviewed past Grand Jury reports from other California counties including Orange and Los Angeles
- Reviewed California Foster Care Legislation
- Reviewed relevant local and national news stories
- Reviewed documents provided by the San Diego County Child Welfare Services
- Attended San Diego County Board of Supervisors Meetings
- Examined CWS's policies and procedures regarding eliminating maltreatment of children in foster care by looking for: Implementation of the mandates of AB 403 Continuum of Care, enacted on January 1, 2017
- Examined adherence to published policies and procedures
- Reviewed ongoing oversight by CWS personnel
- Examined hiring, training and supervision of all levels of CWS Social Workers

The investigation included:

- A County performance audit of CWS's data systems and their particular uses (capturing trends and documenting demographics, educational records and foster children complaints), policies and procedures for the process of handling complaints of abuse of children in foster care, and the impact of AB 403 on social workers' workload relating to administrative tasks versus direct services to children
- Interviewing Child Abuse Hotline workers about decision making procedures regarding the 43,000 yearly calls representing over 79,500 children including the adequacy of the Hotline's Structured Decision Making Tool
- Examining the California Department of Social Services onsite review of the San Diego County Resource Family[14] Approval (RFA) program

---

[14] Resource Family: Individual or couple that the county determines to have successfully met the home approval, the application, and assessment criteria necessary for providing care for a child or non-minor dependent. The term Resource Family incorporates terms such as foster parent, relative caregiver, adoptive family, guardian family, and relative/non-relative extended family member. *Resource Family Approval, Live Well San Diego.*

4

EXHIBIT A

- Studying the December 2018 County of San Diego's Child Welfare Services Review Working Group Report
- Questioning both CWS administrative staff and line employees regarding specific policies, procedures, data systems and communication with community partners

## *DISCUSSION*

### Audit Information

The Grand Jury commissioned a performance audit of the County of San Diego Foster Care System conducted by the County of San Diego Auditor and Controller, Office of Audits & Advisory Services (OAAS).[15] The final audit, dated March 15, 2019, listed numerous policies and procedures addressing foster care. As stated in the report:

> *The Welfare and Institutions (WIC) Code 827 establishes strict confidentiality of child abuse related records which prevented the Office of Audits & Advisory Services (OAAS) from timely access to records necessary to evaluate compliance with established policies and protocols.*

The Technical Assistance Team from the State of California Department of Social Services, which is specifically authorized under Section 827(a)(1)(I) to access records, conducted[16] a review of 26 CWS cases in its audit of Resource Family Approval (RFA). OAAS had to file a petition under Section 827 to access each individual record, even in redacted form. The petitions were filed but subsequently rescinded due to the time constraints for Grand Jury reports. Without that data, it was impossible for the OAAS to evaluate the rate of compliance or the effectiveness of internal CWS polies and procedures. The audit could not address the methods used by the County to assure compliance or to evaluate the effectiveness of the current policies.

The audit concluded that *"Since the implementation of AB 403, CWS has seen a decrease in social worker caseloads each fiscal year since FY2013-14."* However, the audit could not state what factors contributed to the decreases. Reasons such as a significant decrease in the County birthrate since 2007, an increase in County adoptions and an increase in kinship guardianship might have contributed to lower caseloads.

Considering the limitations of the OAAS audit, the Grand Jury recommends an oversight board be established and granted the authority and responsibility to monitor and investigate any report of foster care misconduct or abuse. The county would have to lobby for changes to Section 827 of the Welfare and Institutions Code to allow such an investigatory body to access

---

[15] *Grand Jury Audit of the County of San Diego Foster System"* Report No. A19-008, dated March 15, 2019.
[16] State of California, Health & Human Services Agency, Department of Social Services, *"San Diego County Annual Review Written Report re Resource Family Approval"* dated December 6, 2018.

EXHIBIT A

redacted records without a court order.  This could become the responsibility of the newly formed (March 2019) Child and Family Strengthening Advisory Board.[17]

**Maltreatment in Foster Care Policies, Procedures**
The 985 instances of substantiated maltreatment in foster care in the County are unacceptable. The County of San Diego's Foster and Adoptive Resource Family Services serves 2,400 youth placed in out-of-home care. In 2016-17, CWS stated that 84% of the children in foster care had fewer than three placements in the first 12 months of care. The federal standard is 87%.

During its investigation, the Grand Jury heard a wide range of statements[18] such as:

- One youth gained 20 pounds after removal from a home where the foster parents locked the refrigerator.
- One youth's head was shaved because the foster parent didn't have time to help style the hair.
- One youth was required to make the foster mom's breakfast, take care of all household children, do the family's daily laundry and pack all lunches without help from other family members.
- The majority of complaints from the foster children involved physical abuse and/or neglect.
- Foster children were not allowed to eat the same food as or vacation with the foster family.

Witnesses also reported that[19]:
- Almost one-third of children, from some group homes, were abused (sexually abused, drugged, and/or trafficked out) in their foster homes
- 20% of all Hotline calls were from foster youth
- 15% of the Hotline calls were from foster parents stating that the foster child was being abused by someone else

According to the U.S. Department of Health and Human Services, over 20% of foster youth had allegations of maltreatment.[20] In a major study, one-third (32.8%) of the sample *"reported some form of maltreatment by a foster parent or other adult in the foster home during their foster care experience, as recorded in their case files.[21]"*  In fact, an international study of foster

---

[17] *San Diego Union Tribune,* Tom Christensen, *County Strengthens Oversight of Child Welfare System,* March 12, 2019.
[18] See footnote 7.
[19] Id.
[20] According to the U.S. Department of health and Human Services (2004a), p.xv; in the current National Survey of Child and Adolescent Well-Being (NSCAW): over 20% of foster youth had allegations of maltreatment [Kohl, Gibbons, and NSCAW Research Group (2005).
[21] *Improving family foster care: Findings from the Northwest Foster Care Alumni Study,* Pecora, P.J., Kessler, R.C., Williams, J., O'Brien, K., Downs, A. C., English, D., White, J., Hiripi, E., White, C.R., Wiggins, T., & Holmes, K. E.

6

care youth found that the risk of physical abuse in care was threefold compared to the general population. In an additional research study *"findings suggest that allegations of maltreatment in out-of-home care are NOT uncommon."*[22]  The study also suggested that *"foster care workers may need to more carefully consider not only the compatibility of children and prospective foster parents but also the risk presented by others present in the home or facility."*[23] The study stated that respite care (temporary institutional care of a sick, elderly, or disabled person, providing relief for their usual caregiver), parent training and other supportive services may reduce the risk of physical abuse, the most common maltreatment in out-of-home care. *"Sexual abuse, which is most common in nonrelative and congregate care, may be prevented through enhanced screening of employees at care facilities and prospective non-relative and kinship foster parents."*[24]

As of January 2017, there were 875 Resource Family homes (aka: foster family homes) in San Diego County. This is down from the 1570 resource homes in 2013. With the implementation of Resource Family Approval (RFA), licensed foster homes needed a child placement in the year 2017 to be eligible to convert to an RFA home. If not, their foster care license was forfeited.

Even though foster families have 12 hours of initial training including an orientation and eight hours of continuing education/year, the Grand Jury believes increased training in trauma and parent education will decrease maltreatment in RFA's and kinship care.

The last two County of San Diego Health and Human Services Agency's Adopted Operational Plan Fiscal Years 2017-18 and 2018-19 promoted healthy families. They highlighted Safety Organized Practice (SOP), a required statewide strategy designed to enhance social work skills in family engagement and critical thinking to create sustained safety for children. A key organizational objective is to increase the number of child abuse referrals and cases reviewed under SOP. That percentage increased from 53% in Fiscal Year (FY) 2017 to over 65% in FY2018. The goal is 80% for FY2019. [25] The Grand Jury believes that CWS must ensure consistent, documented, follow-up to all foster care maltreatment cases with SOP.

**Child Abuse Hotline**

The Child Abuse and Neglect Hotline is San Diego's initial safeguard for abused children. These dedicated County employees work long hours making sure innocent children are physically and emotionally protected. The Hotline serves a critical need for our neighborhoods, schools,

---

*Improving family foster care: Findings from the Northwest Foster Care Alumni Study*, Seattle, WA; Casey Family Programs. Available at http://www.casey.org

[22] *Child Protection Investigations in Out-of-Home Care: Perpetrators, Victims and Contexts* from the University of Texas at Austin Population Research Center, Sarah A. Font, University of Texas at Austin, Population Research Center, 1 university Station A2702, Austin, TX 78704, USA, July 2015

[23] Ibid

[23] Ibid

[24] Ibid

[25] County of San Diego Health and Human Services Agency; Adopted Operational Plan Fiscal Years 2017-18 and 2018-2019; and County of San Diego Health and Human Services Agency Fiscal Years 2018-2019 and 2019-2020.

EXHIBIT A

communities and social fabric. The Grand Jury salutes the incredible dedication of the Hotline unit.

The Child Abuse and Neglect Hotline receives and responds to nearly 43,000 calls per year representing 79,500 children.[26] Of the 79,500 represented children, over 40,000 of these children are interviewed per year. Forty-four (44) Child Abuse and Neglect Hotline Protective Service Workers as well as 12 Records Clerks and one Manager are on site for child abuse and neglect situations. All of the workers are trained in crisis counseling and have a list of community referrals.

From the time a telephone call is received at the Hotline Center to the time that a case is promoted to "ongoing" services, hours of work are recorded. Decisions include:
- Assigning response time of 24 hours, 5 days or 10 days
- Assignment to a regional office
- Assignment of social workers
- Worker's use of the Structured Decision Making Tool (SDM)[27]
- Worker's consultation with their supervisor
- Opening of a case
- Family interviews, child interviews, "collateral" interviews (teachers, neighbors, school personnel)
- Protective Custody referrals
- Completing the initial investigation in 30 days
- Contacting police, medical and school to determine substantiated abuse
- Documenting all information in Federal, State and County databases
- Team decisions regarding a Court case or a voluntary services case
- Six month case reviews
- Recommendations to the court

The Hotline work is time sensitive and emotionally intense. The Hotline social worker listens to all the information from the complainant while using the SDM. After consultation with their Supervisor, the decision is made to respond to the complaint in 2-24 hours, 5 days, or 10 days. As one source stated: *"Information + Social Worker's Judgment + Consultation with the Supervisor = Decision."*

The referral is sent to the region (by zip code) and the regional social worker makes contact.

In addition, the Grand Jury found that:

---

[26] County of San Diego Health and Human Services Agency; Adopted Operational Plan Fiscal Years 2017-18 and 2018-2019

[27] The Structured Decision Making (SDM) Tool *SDM* is a comprehensive case management system for Child Protective Services (CPS). CPS workers employ objective assessment procedures at major case decision points from intake to reunification to improve child welfare decision-making. https://www.cebc4cw.org/program/structured-decision-making/detailed

EXHIBIT A

- Gathering information is difficult and complex (tracking individuals, law enforcement confidentiality); *"It's not a perfect system but that's the nature of our agency"*
- Social worker discipline is confidential and handled by HR;
- Changes from AB 403 added more statutes and stress
- Foster Family Agency (FFA) complaints are NOT investigated by the County.

The Grand Jury interviewed multiple members of CWS line staff and the administrative staff. Two crucial Hotline issues need to be addressed. They are:

1. The Hotline transfers over to the A.B. and Jessie Polinsky Children's Center at 10:30 pm and returns to the Hotline office at 6:00 am the following morning. The Grand Jury is alarmed that Polinsky staff training is not as extensive as those stationed at the Hotline.
2. The Grand Jury is concerned about the lack of specific documentation when a foster child calls the Hotline. Calls are not delineated or red-flagged as being from a foster youth. Data did not exist for the percent of calls from foster youth nor whether abuse happened before or after Foster Care. One source said *"We cannot identify the reported caller and we can't tell. It's investigated like any other case."*

**Social Workers**

In the course of this investigation, the Grand Jury interviewed CWS line and staff employees. Statements such as navigating a flawed system, children asking to see social workers more often, dealing with burned-out employees waiting for retirement, and complications of liability due to lack of documentation, undermine quality foster care.  Witnesses testified[28] that there are many issues which undermine their ability to provide quality foster care.  Among the issues cited were:

- Having to spend 50% of their time on computer input and paperwork thereby reducing the amount of time devoted to providing services to children and parents
- Coping with procedural changes, including those resulting from AB 403 implementation
- Lack of communication between the social worker and the family
- Lack of coordination with outside agencies
- Tight timescales for completing work
- Stress levels inherent in the nature of the work
- Anxiety of new workers due to lack of experience
- Stress and secondary trauma due to dealing with abused children

Many social workers are new graduates and have little experience in detecting abuse or handling emotional volatility. Other social workers, with years of exposure to the perceived failures of the foster system, exhibit pessimistic behaviors. In addition, administrative paperwork and computer work often supersedes home visits in priority. Standard 14 of the

---

[28] See footnote 7.

EXHIBIT A

National Association of Social Workers (NASW) Standards for Social Work Practice in Child Welfare states,

> *Social Workers who act as administrators shall promote an organizational culture that supports reasonable caseloads and workloads, adequate supervision, appropriate use of emerging technologies and legal protection for employees' actions in the course of carrying out their professional responsibilities.*

Social workers and support staff need additional help to serve the foster child population. The Grand Jury discovered that the experience and training of the person doing a home investigation impacted further investigations, that friction existed between regional staff and the county staff and that some families stated there was lack of communication with their social worker. In addition, an investigation may pass through multiple social workers, thus creating confusion and anxiety among the children.

According to the California Child Welfare Indicators Project (CCWIP) at UC Berkeley, San Diego's monthly caseworker resident visits, ending in September 2018, for out of home foster youth were 58%. Visits for FFAs were 62%. The California state average of caseworker visits was 74.8% for counties and 75.4% for FFAs, a nearly 17% difference with the County of San Diego and 13% difference with San Diego's FFAs. A common plea was the need for more staff.

| Average Caseworker Monthly Visits | | |
|---|---|---|
| | County | FFA |
| State of California | 75% | 75% |
| San Diego | 58% | 62% |
| Difference | -17% | -13% |

Among the problems identified by the Child Welfare Services Review Working Group and their December 4, 2018 report [29] were:

1. Insufficient coordination between the regions and central management
2. High workloads, insufficient training, and pervasive secondary traumatic stress which lead to inadequate investigations and outcomes
3. Lack of transparency about policies and practices that result in a lack of trust in the system
4. Lack of focus on child safety and the minimization of further system-induced trauma as the central considerations in all decision-making
5. Inadequate focus on the unified delivery of social work practice across all HHSA regions,

---

[29] *Recommendations for Improving County of San Diego Child Welfare Services,* A Report to the County of San Diego Chief Administrative Officer, Child Welfare Services Review Working Group, December 4, 2018

EXHIBIT A

6. Deficient personnel morale and retention

For CWS to achieve its mission, it is critical for the agency to attract, train, develop and retain a capable and prepared workforce. CWS loses a number of social workers per month to different county departments, other outside agencies or retirement. Although CWS recruits from San Diego State and Cal State San Marcos' Title 4E programs (this course of study pays for the students Master's degree provided the student works for a County agency for two years), consistent employee turnover impacts outcomes.

Social workers (whether Bachelor, Master or Doctor degreed) are the backbone of the Foster Care system. Witnesses testified that Social workers spend 50% of their time on documentation and 50% of their time with the children and parents. "They are responsible for everything. Caseloads for the social workers (investigators) average nine new investigations per month and 18 cases at any given time (case workers). Although this is in alignment with best practices, numbers fluctuate throughout the year.[30]

Social workers are required to visit families every month, report findings and provide updates to the Juvenile Courts at least every six months and often more frequently, depending on the stage of the court proceedings. They are the eyes and ears watching, advocating and training foster parents. The social worker must document complaints, update health and safety measures and make sure changes in the home as well as continuing education are completed. The health and protection of each child is enhanced by dedicated social workers. Again, the Grand Jury applauds their extraordinary effort.

The Grand Jury looked for ways to support and improve the environment of the social worker, the families and the individual child. The Grand Jury found the need for:
1. A centralized CWS system to coordinate policies and procedures with the individual regions' staffs, making sure that *"everybody's on the same page, doing the same thing, living by the same standards and accountability in the system."*[31]
2. Increased interaction between social workers and the foster child.
3. Unscheduled visits by social workers to the Resource Family home "to see what's really going on."
4. Better trained social workers as stated in NASW's Standards for Social Work Practice in Child Welfare.
5. All CWS workers, as well as Resource Parents, to be trained in trauma informed care as well as Adverse Childhood Experiences (ACEs).
   In 2016-2017, 100% of the CWS staff at the A. B. and Jessie Polinsky Children's Center received trauma informed training. 86% of direct care staff completed Trauma informed training.[32]

---

[30] See footnote 7.
[31] www.sandiegouniontribune.com/opinion/commentary/sd-utbg-san-diego-board-of-supervisors-jacob-20190221-story.html.
[32] County of San Diego Health and Human Services Adopted Operational Plan Fiscal Years 2017-2018.

EXHIBIT A

6. Better communication procedures among CWS social workers and their FFA and County regional counterparts.
7. Reduced CWS staff turnover and increased social worker-foster child ratio.
8. A team approach (social worker, supervisor, mandated reporter, medical professional) when investigating the maltreatment in foster care. This should include a team of 2 social workers covering the initial child and parent interviews.
9. Creation of an oversight committee with the authorization to review and track cases without redactions.

## FINDINGS



**Finding 01:** Social workers spend approximately half of their time on documentation and half of their time with the children and parents.

**Finding 02:** On average, 12 children need out-of-home placement each day in San Diego County due to abuse and neglect.

**Finding 03:** Of the approximately 2,100 children in foster care, 20% of group home children were reported to be abused in their foster home. Most complaints involved physical abuse and/or neglect.

**Finding 04:** The County of San Diego's **985** instances of substantiated maltreatment in foster care were similar to the State of California averages for the same time periods.

---

[33] www.cssr.berkeley.edu/ucb_childwelfare/

EXHIBIT A

**Finding 05:** San Diego County social workers often feel overwhelmed with the number of monitored children. With AB 403, the increased need for administrative documentation reduces the time a social worker can spend with a foster child/family.

**Finding 06:** CWS management and staff, in all units, need reduced workload sizes."[34]

**Finding 07:** Some foster families do not feel they have enough contact with their social worker. There are families that feel a lack of communication with CWS workers.

**Finding 8:** All foster children caregivers need parent training, respite care or other supportive services.

**Finding 9:** Abuse and neglect may be reduced through enhanced screening/training of prospective non-relative and kinship foster parents.

**Finding 10:** Safety Organized Practice (SOP) is a required statewide strategy designed to enhance social work skills in family engagement and critical thinking. For the County the percentage increased from 53% in Fiscal Year (FY) 2017 to over 65% in FY2018. The goal is 80% for FY2019.

**Finding 11:** For CWS to achieve its mission it is critical for the agency to attract, train, develop and retain a capable and prepared workforce.

**Finding 12:** CWS loses a number of social workers per month to different county departments, other outside agencies or retirement.

**Finding 13:** High employee turnover negatively impacts clinical outcomes.

**Finding 14:** Communication between the Region and the Hotline workers could be more extensive.

**Finding 15:** On average, 15% of Hotline calls were from foster parents stating that the foster child was being abused by someone other than the foster parents.

**Finding 16:** The current Hotline system does not notate whether abuse happened before or after entry into foster care.

**Finding 17:** Foster child telephone calls to the Child Abuse Hotline are not red flagged as being from a foster child therefore the percentage of calls from foster youth are not tracked.

---

[34] San Diego County Annual Review Written Report, December 6, 2018; The California Department of Social Services (CDSS) Resource Family Approval (RFA) Technical assistance team, Page 3.

**SAN DIEGO COUNTY GRAND JURY 2018/2019 (filed June 12, 2019)**

EXHIBIT A

**Finding 18:** The Child Abuse Hotline transfers over to A.B. and Jessie Children's Polinsky Center from 10:30 pm to 6:00 am every day; however, Polinsky staff training is not as extensive as those stationed at the Hotline.

**Finding 19:** Regional case carrying staff do not have a complete understanding of the Resource Family Agency (RFA) process and its requirements, resulting in a lack of communication with RFA workers when children are in placement.[35]

### RECOMMENDATIONS

The 2018/2019 San Diego County Grand Jury recommends that the County of San Diego Chief Administrative Officer consider as deemed appropriate:

**19-40:** Request CWS, to study annual substantiated maltreatment numbers in San Diego County (cause and effect) and to determine best practices for minimizing maltreatment occurrences in the future.

**19-41:** Request CWS to investigate the addition of a system to coordinate policies and procedures with regional staff and FFAs.

**19-42:** Request CWS to require any new or modified database system to delineate calls from foster youth.

**19-43:** Request CWS to establish a training program on maltreatment of children (including human trafficking) that is required for *all* CWS staff, including congregate care employees and out-of-home families.

**19-44:** Request CWS to study turnover rates for staff and to develop best practices for recruitment, training and retention that would include salary and benefit comparisons across San Diego County.

**19-45:** Request CWS to study current workloads for County social workers and to develop a system that allows for increased interaction between social workers and the foster child and family.

**19-46:** Request CWS to determine whether a team approach, including a minimum of two social workers per scheduled and unscheduled visits, would be viable when investigating alleged maltreatment.

---

[35] San Diego County Annual Review Written Report, December 6, 2018; The California Department of Social Services (CDSS) Resource Family Approval (RFA) Technical assistance team, Page 3.

EXHIBIT A

19-47:          **Recommend that an oversight board be established with the authority to access and investigate all reports of foster care maltreatment as well as foster care records.**

19-48:          **Recommend that Hotline workers specifically document foster child calls and gather data accordingly.**

19-49:          **Request CWS that all Polinsky workers answering Hotline calls between 10:30pm and 6:00am receive the same training as regular hour Hotline staff.**

## *REQUIREMENTS AND INSTRUCTIONS*

The California Penal Code §933(c) requires any public agency which the Grand Jury has reviewed, and about which it has issued a final report, to comment to the Presiding Judge of the Superior Court on the findings and recommendations pertaining to matters under the control of the agency. Such comment shall be made no later than 90 days after the Grand Jury publishes its report (filed with the Clerk of the Court); except that in the case of a report containing findings and recommendations pertaining to a department or agency headed by an elected County official (e.g. District Attorney, Sheriff, etc.), such comment shall be made within 60 days to the Presiding Judge with an information copy sent to the Board of Supervisors.

Furthermore, California Penal Code §933.05(a), (b), (c), details, as follows, the manner in which such comment(s) are to be made:

(a) As to each grand jury finding, the responding person or entity shall indicate one of the following:
          (1) The respondent agrees with the finding
          (2) The respondent disagrees wholly or partially with the finding, in which case the response shall specify the portion of the finding that is disputed and shall include an explanation of the reasons therefor.

(b) As to each grand jury recommendation, the responding person or entity shall report one of the following actions:
          (1) The recommendation has been implemented, with a summary regarding the implemented action.
          (2) The recommendation has not yet been implemented, but will be implemented in the future, with a time frame for implementation.
          (3) The recommendation requires further analysis, with an explanation and the scope and parameters of an analysis or study, and a time frame for the matter to be prepared for discussion by the officer or head of the agency or department being investigated or reviewed, including the governing body of the public agency when applicable. This time frame shall not exceed six months from the date of publication of the grand jury report.
          (4) The recommendation will not be implemented because it is not warranted or is not reasonable, with an explanation therefor.

EXHIBIT A

(c) If a finding or recommendation of the grand jury addresses budgetary or personnel matters of a county agency or department headed by an elected officer, both the agency or department head and the Board of Supervisors shall respond if requested by the grand jury, but the response of the Board of Supervisors shall address only those budgetary or personnel matters over which it has some decision making authority. The response of the elected agency or department head shall address all aspects of the findings or recommendations affecting his or her agency or department.

Comments to the Presiding Judge of the Superior Court in compliance with the Penal Code §933.05 are required from the:

| Responding Agency | Recommendations | Response Date |
|---|---|---|
| **County of San Diego Chief Administrative Officer** | **19-40 through 19-49** | **09/03/19** |

16

EXHIBIT A

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7070 |

PLAINTIFF(S) / PETITIONER(S):   Tyler Walter by and through his successor in interest Lisa Walter et.al.

DEFENDANT(S) / RESPONDENT(S):   County of San Diego et.al.

TYLER WALTER BY AND THROUGH HIS SUCCESSOR IN INTEREST LISA WALTER VS COUNTY OF SAN DIEGO [IMAGED]

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2019-00053901-CU-CR-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Randa Trapp                                    Department: C-70

**COMPLAINT/PETITION FILED:** 10/10/2019

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 04/10/2020 | 09:50 am | C-70 | Randa Trapp |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

SDSC CIV-721 (Rev. 01-17)

**NOTICE OF CASE ASSIGNMENT**

Page: 1

EXHIBIT A



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.

This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

EXHIBIT A

Shawn A. McMillan, Esq. – SBN: 208529
attyshawn@netscape.net
Stephen D. Daner, Esq. – SBN: 259689
steve.mcmillanlaw@gmail.com
Adrian M. Paris, Esq. – SBN: 301355
adrian.mcmillanlaw@gmail.com
THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
4955 Via Lapiz
San Diego, California 92122
Phone: (858) 646-0069
Fax: (858) 746-5283

Attorneys for Plaintiffs Tyler Walter
and Lisa Walter

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**10/10/2019** at 01:34:05 PM
Clerk of the Superior Court
By Valeria Contreras, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| TYLER WALTER, a deceased minor, by and through his successor in interest, LISA WALTER; LISA WALTER, an individual,<br><br>      Plaintiff,<br><br>      vs.<br><br>COUNTY OF SAN DIEGO, a public entity; MELINDA EICHENBERG, an individual; JOANNA KIENTZ, an individual; FANITA DURHAM, an individual; KATHERINE MANNO (TOPPIN), an individual; MELISSA CASTILLO, an individual; and DOES 1 through 50, inclusive,<br><br>      Defendants. | Case No: 37-2019-00053901-CU-CR-CTL<br><br>**DECLARATION OF LISA WALTER PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32**<br><br>Complaint Filed: October 8, 2019 |

EXHIBIT A

I, Lisa Walter, am over the age of 18 and one of the named Plaintiffs in the present action. I have personal knowledge of the facts set forth herein, and if called before this Court, or any other court or tribunal, I could and would testify competently as follows:

1.   I am Tyler's natural mother and my parental rights were never terminated.

2.   My son, Tyler Walter, died on September 22, 2018 in Long Beach, California. At the time Tyler died, he was less than two years old.

3.   Due to Tyler's incredibly young age, he obviously left no spouse, no children, and no issue.

4.   I am Tyler's rightful heir under California Code of Civil Procedure §377.60(a) and Probate Code §6402(b) and §6450(a).

5.   Thus, I am Tyler's successor in interest, as defined in §377.11 of the California Code of Civil Procedure and am authorized to act on his behalf with respect to his interests in this action.

6.   No proceeding is now pending in California for administration of Tyler's estate.

7.   No other person has a superior right to me to commence the action or proceeding or to be substituted for Tyler in the pending action or proceeding.

8.   Attached hereto as **Attachment A** is a certified copy of Tyler's death certificate from the County of Los Angeles.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Dated: ___October 08___, 2019

_Lisa Walter_
Lisa Walter, Mother of Tyler Walter

DECLARATION OF LISA WALTER PURSUANT TO
CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

1

EXHIBIT A

# Attachment A

# Attachment A

# Attachment A

EXHIBIT A

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# CITY OF LONG BEACH
## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### LONG BEACH, CALIFORNIA

### PHYSICIAN/CORONER'S AMENDMENT
NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS

3052018204664
STATE FILE NUMBER

3201862002495
LOCAL REGISTRATION NUMBER

1.1

☐ BIRTH   ☒ DEATH   ☐ FETAL DEATH

**TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD**

### PART I   INFORMATION TO LOCATE RECORD

| | | | |
|---|---|---|---|
| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 1A. NAME—FIRST<br>TYLER | 1B. MIDDLE<br>JAMES | 1C. LAST<br>WALTER | 2. SEX<br>M |

| 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT |
|---|---|---|
| 09/22/2018 | LONG BEACH | LOS ANGELES |

### PART II   STATEMENT OF CORRECTIONS

| | 6. CERTIFICATE ITEM NUMBER | 7. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| LIST ONE ITEM PER LINE | 107A | DEFERRED | BLUNT HEAD TRAUMA |
| | 107AT | - | UNK |
| | 119 | PENDING INVESTIGATION | COULD NOT BE DETERMINED |
| | 120 | | NO |
| | 121 | | UNK |
| | 122 | | UNK |
| | 123 | | UNK |
| | 124 | | UNK |
| | 125 | | UNK, |

**I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**

| DECLARATION OF CERTIFYING PHYSICIAN OR CORONER | 9. SIGNATURE OF CERTIFYING PHYSICIAN OR CORONER<br>► KEVIN J YOUNG MD | 10. DATE SIGNED—MM/DD/CCYY<br>08/09/2019 | 11. TYPED OR PRINTED NAME AND TITLE/DEGREE OF CERTIFIER<br>DME |
|---|---|---|---|
| | 12. ADDRESS—STREET and NUMBER<br>1104 NORTH MISSION ROAD | 13. CITY<br>LOS ANGELES | 14. STATE<br>CA | 15. ZIP CODE<br>90033 |

| STATE/LOCAL REGISTRAR USE ONLY | 16. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR<br>► STATE REGISTRAR - OFFICE OF VITAL RECORDS | 17. DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY<br>08/09/2019 |
|---|---|---|

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS   *0020101004262008*   FORM VS 24Aa (REV. 1/08)

1.1

CALONGBEOL



### CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, CITY OF LONG BEACH

000710430

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Vital Records Section, Long Beach Department of Health and Human Services.

DATE ISSUED   SEP 1 7 2019

Anissa Davis, MD, MPH
HEALTH OFFICER

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

EXHIBIT A

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# CITY OF LONG BEACH
## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### LONG BEACH, CALIFORNIA

STATE FILE NUMBER 3052018204664

**CERTIFICATE OF DEATH**
USE BLACK INK ONLY / NO WHITE-OUT, WHITEOUTS OR ALTERATIONS

LOCAL REGISTRATION NUMBER 3201862002495

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT—FIRST (Given) | TYLER |
| 2. MIDDLE | JAMES |
| 3. LAST (Family) | WALTER |
| AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST) | |
| 4. DATE OF BIRTH mm/dd/ccyy | 11/08/2016 |
| 5. AGE Yrs. | 1 |
| IF UNDER ONE YEAR Months / Days | |
| IF UNDER 24 HOURS Hours / Minutes | |
| 6. SEX | M |
| 8. BIRTH STATE/FOREIGN COUNTRY | CA |
| 10. SOCIAL SECURITY NUMBER | 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 |
| 11. EVER IN U.S. ARMED FORCES? | X NO |
| 12. MARITAL STATUS (at time of death) | NEVER MARRIED |
| 13. DATE OF DEATH mm/dd/ccyy | 09/22/2018 |
| 14. HOUR (24 Hours) | 2113 |
| 15. EDUCATION – Highest Level/Degree | 00 |
| 16. WAS DECEDENT HISPANIC/LATINO/SPANISH? | YES / X NO |
| 17. DECEDENT'S RACE | CAUCASIAN |
| 18. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | INFANT |
| 19. KIND OF BUSINESS OR INDUSTRY | |
| 19. YEARS IN OCCUPATION | 0 |

| Field | Value |
|---|---|
| 20. DECEDENT'S RESIDENCE (Street and number, or location) | 1819 SHIPWAY AVENUE |
| 21. CITY | LONG BEACH |
| 22. COUNTY/PROVINCE | LOS ANGELES |
| 23. ZIP CODE | 90815 |
| 24. YEARS IN COUNTY | 0 |
| 25. STATE/FOREIGN COUNTRY | CA |
| 26. INFORMANT'S NAME, RELATIONSHIP | GENEVIEVE HOPE WALTER, COUSIN |
| 27. INFORMANT'S MAILING ADDRESS | 1819 SHIPWAY AVENUE, LONG BEACH, CA 90815 |

| Field | Value |
|---|---|
| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | |
| 29. MIDDLE | |
| 30. LAST (BIRTH NAME) | |
| 31. NAME OF FATHER/PARENT—FIRST | UNKNOWN |
| 32. MIDDLE | UNKNOWN |
| 33. LAST | UNKNOWN |
| 34. BIRTH STATE | UNKNOWN |
| 35. NAME OF MOTHER/PARENT—FIRST | LISA |
| 36. MIDDLE | ANN |
| 37. LAST (BIRTH NAME) | WALTER |
| 38. BIRTH STATE | CO |

| Field | Value |
|---|---|
| 39. DISPOSITION DATE mm/dd/ccyy | 10/12/2018 |
| 40. PLACE OF FINAL DISPOSITION | RES GENEVIEVE HOPE WALTER 1819 SHIPWAY AVENUE, LONG BEACH, CA 90815 |
| 41. TYPE OF DISPOSITION(S) | CR/RES |
| 42. SIGNATURE OF EMBALMER | NOT EMBALMED |
| 43. LICENSE NUMBER | |
| 44. NAME OF FUNERAL ESTABLISHMENT | FOREST LAWN MEMORIAL-PARKS & MORTUARIES |
| 45. LICENSE NUMBER | FD1051 |
| 46. SIGNATURE OF LOCAL REGISTRAR | ANISSA DAVIS, MD, MPH |
| 47. DATE mm/dd/ccyy | 10/10/2018 |

| Field | Value |
|---|---|
| 101. PLACE OF DEATH | LONG BEACH MEMORIAL MEDICAL CENTER |
| 102. IF HOSPITAL, SPECIFY ONE | X ER/OP |
| 103. IF OTHER THAN HOSPITAL, SPECIFY ONE | |
| 104. COUNTY | LOS ANGELES |
| 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 2801 ATLANTIC AVENUE |
| 106. CITY | LONG BEACH |

| Field | Value |
|---|---|
| 107. CAUSE OF DEATH — IMMEDIATE CAUSE (A) | DEFERRED |
| Time From Onset to Death | |
| 108. DEATH REPORTED TO CORONER | X YES / NO |
| | 2018-07351 |
| Sequentially list conditions (B) | |
| | 115. BIOPSY PERFORMED? YES / X NO |
| UNDERLYING CAUSE (C) | |
| | 110. AUTOPSY PERFORMED? X YES / NO |
| | 111. USED IN DETERMINING CAUSE? X YES / NO |
| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 | NONE |
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? | NO |
| 113A. IF FEMALE, PREGNANT IN LAST YEAR? | |

| Field | Value |
|---|---|
| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | |
| 115. SIGNATURE AND TITLE OF CERTIFIER | |
| 116. LICENSE NUMBER | |
| 117. DATE mm/dd/ccyy | |
| Decedent Attended Since / Decedent Last Seen Alive | |
| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | |

| Field | Value |
|---|---|
| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | |
| MANNER OF DEATH | Natural / Accident / Homicide / Suicide / X Pending Investigation / Could not be determined |
| 120. INJURED AT WORK? | YES / NO / UNK |
| 121. INJURY DATE mm/dd/ccyy | |
| 122. HOUR (24 Hours) | |
| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) | |
| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) | |
| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) | |
| 126. SIGNATURE OF CORONER / DEPUTY CORONER | REGINA AUGUSTINE |
| 127. DATE mm/dd/ccyy | 10/05/2018 |
| 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER | REGINA AUGUSTINE, DEP/CORONER |

| STATE REGISTRAR | A | B | C | D | E |
|---|---|---|---|---|---|

*010001004005436*

FAX AUTH.#

CENSUS TRACT



CALONGBEDI

---

### CERTIFIED COPY OF VITAL RECORD
#### STATE OF CALIFORNIA, CITY OF LONG BEACH

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Vital Records Section, Long Beach Department of Health and Human Services.

000710429

DATE ISSUED    SEP 17 2019



HEALTH OFFICER

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

EXHIBIT A

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Shawn A. McMillan, Esq. (SBN: 208529)<br>Adrian M. Paris, Esq. (SBN: 301355)<br>The Law Offices of Shawn A. McMillan, APC<br>4955 Via Lapiz, San Diego, CA 92122<br><br>TELEPHONE NO.: (858) 646-0069          FAX NO.(Optional): (858) 746-5283<br>EMAIL ADDRESS (Optional): adrian.mcmillanlaw@gmail.com<br>ATTORNEY FOR (Name): Lisa Walter, individually and as Tyler's successor in interest | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**10/11/2019** at 01:57:00 PM<br><br>Clerk of the Superior Court<br>By Jessica Pascual,Deputy Clerk |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>☐ CENTRAL DIVISION, CENTRAL COURTHOUSE, 1100 UNION ST., SAN DIEGO, CA 92101<br>☒ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101<br>☐ CENTRAL DIVISION, KEARNY MESA, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123<br>☐ CENTRAL DIVISION, JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910 | |
| PLAINTIFF(S)/PETITIONER(S)<br>Tyler Walter, by and through his successor in interest, Lisa Walter, et.al. | |
| DEFENDANT(S)/RESPONDENT(S)<br>County of San Diego, et al. | JUDGE<br>Hon. Randa Trapp |
| IN THE MATTER OF | DEPT<br>C-70 |
| **PEREMPTORY CHALLENGE** | CASE NUMBER<br>37-2019-00053901-CU-CR-CTL |

Adrian M. Paris _____, is ☐ a party ☒ an attorney for a party in the

above-entitled case and declares that the Hon. Judge Randa Trapp _____, the judicial officer to

whom this case is assigned, is prejudiced against the party or the party's attorney or the interests of the party or the party's

attorney such that the said party or parties believe(s) that a fair and impartial trial or hearing cannot be had before such

judicial officer.

WHEREFORE, pursuant to the provisions of Code Civ. Proc. §170.6, I respectfully request that this court issue its order

reassigning said case to another, and different, judicial officer for further proceedings.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/11/2019 _____          _____

                                                                                                Signature

---

## ORDER

☑ GRANTED – The court finds the challenge is timely filed and the party's/attorney's above statement meets the
requirements of Code of Civ. Proc. §170.6 (a)(4).  The case will be reassigned and a notice will be mailed to the parties
and/or counsel.

☐ DENIED

**IT IS SO ORDERED.**

Date:   10-17-19 _____          _Eddie C. Sturgeon_ _____

                                                                  Judge/~~Commissioner~~ of the Superior Court

                                                                  **Eddie C. Sturgeon**  signed on behalf of
                                                                                                      Randa Trapp

Date:   10-18-19 _____     Case is reassigned to Judge/~~Commissioner~~   Ronald L. Styn

SDSC ADM-381 (New 8/19)               **PEREMPTORY CHALLENGE**                    Code Civ. Proc. § 170.6

EXHIBIT A

BatchPrintExtract_01.csv-1793-000000054

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:      330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:   San Diego, CA 92101
BRANCH NAME:        Central
TELEPHONE NUMBER: (619) 450-7074

PLAINTIFF: Tyler Walter by and through his successor in interest Lisa Walter et.al.

DEFENDANT: County of San Diego et.al.

Short Title: Tyler Walter by and through his successor in interest Lisa Walter vs County of San Diego [IMAGED]



| NOTICE OF CASE REASSIGNMENT | CASE NUMBER:<br>37-2019-00053901-CU-CR-CTL |
|---|---|

**Filed :** 10/10/2019

**EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED FOR ALL PURPOSES:**

to Judge Ronald L. Styn, in Department C-74

due to the following reason:   170.6

All subsequent documents filed in this case must include the name of the new judge and the department number on the first page immediately below the number of the case. All counsel and self-represented litigants are advised that Division II of the Superior Court Rules is strictly enforced. It is the duty of each plaintiff (and cross-complainant) to serve a copy of this notice with the complaint (and cross-complaint).

ANY NEW HEARINGS ON THIS CASE WILL BE SCHEDULED BEFORE THE NEW JUDICIAL OFFICER

EXHIBIT A

BatchPrintExtract_01.csv-1794-000000054

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** Tyler Walter by and through his successor in interest Lisa Walter vs County of San Diego [IMAGED]

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | **CASE NUMBER:** **37-2019-00053901-CU-CR-CTL** |
|---|---|



I certify that I am not a party to this cause. I certify that a true copy of NOTICE OF CASE REASSIGNMENT was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The certification occurred at <u>San Diego</u>, California on <u>10/18/2019</u>. The mailing occurred at <u>Gardena, California</u> on <u>10/21/2019</u>.

Clerk of the Court, by: _____, Deputy
M. Barnardez

STEPHEN  D DANER
LAW OFFICES OF SHAWN A. MCMILLAN, A.P.C.
4955  VIA LAPIZ
SAN DIEGO, CA 92122

ADRIAN M PARIS
4955 VIA LAPIZ
SAN DIEGO, CA 92122

SHAWN  A MCMILLAN
4955  VIA LAPIZ
SAN DIEGO, CA 92122

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

EXHIBIT A

BatchPrintExtract_01.csv-1790-000000055

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:      330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:   San Diego, CA 92101
BRANCH NAME:        Central
TELEPHONE NUMBER: (619) 450-7074

PLAINTIFF(S)/PETITIONER(S)/APPELLANT(S): Tyler Walter by and through his successor in interest Lisa Walter et.al.

DEFENDANT(S)/RESPONDENT(S): County of San Diego et.al.

Short Title: Tyler Walter by and through his successor in interest Lisa Walter vs County of San Diego [IMAGED]

| NOTICE OF HEARING | CASE NUMBER:<br>37-2019-00053901-CU-CR-CTL |
|---|---|



Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above.  All inquiries regarding this notice should be referred to the court listed above.

| TYPE OF HEARING | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 03/20/2020 | 10:30 am | C-74 | Ronald L. Styn |

Counsel: Check service list.  If you have brought a party into this case who is not included in the service list, San Diego Superior Court Local Rules, Division II, requires you to serve the party with a copy of this notice.

A case management statement must be completed by counsel for all parties or parties in pro per and timely filed with the court at least 15 days prior to the initial case management conference.  (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR options.

EXHIBIT A

BatchPrintExtract_01.csv-1791-000000055

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
33O West Broadway
San Diego, CA 92101

---

**SHORT TITLE:** Tyler Walter by and through his successor in interest Lisa Walter vs County of San Diego [IMAGED]

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | **CASE NUMBER:** 37-2019-00053901-CU-CR-CTL |
|---|---|



I certify that I am not a party to this cause. I certify that a true copy of NOTICE OF HEARING was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The certification occurred at San Diego, California on 10/18/2019. The mailing occurred at Gardena, California on 10/21/2019.

Clerk of the Court, by: _Sherry Klais-Trent_
S. Klais-Trent
_____, Deputy

STEPHEN D DANER
LAW OFFICES OF SHAWN A. MCMILLAN, A.P.C.
4955 VIA LAPIZ
SAN DIEGO, CA 92122

ADRIAN M PARIS
4955 VIA LAPIZ
SAN DIEGO, CA 92122

SHAWN A MCMILLAN
4955 VIA LAPIZ
SAN DIEGO, CA 92122

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

EXHIBIT A



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2019-00053901-CU-CR-CTL      CASE TITLE: Tyler Walter by and through his successor in interest Lisa W

<u>**NOTICE:**</u> All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
> (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
> (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), <u>*and*</u>
> (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

<u>**Potential Advantages and Disadvantages of ADR**</u>
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Gives parties more control over the dispute resolution process and outcome | |
| • Preserves or improves relationships | |

<u>**Most Common Types of ADR**</u>
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

EXHIBIT A

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>**Local ADR Programs for Civil Cases**</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at <u>www.sdcourt.ca.gov/adr</u> and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at <u>www.sdcourt.ca.gov/adr</u> or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at <u>www.ncrconline.com</u> or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at <u>www.nclifeline.org</u> or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>**Legal Representation and Advice**</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

EXHIBIT A

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

**STREET ADDRESS:**     330 West Broadway
**MAILING ADDRESS:**     330 West Broadway
**CITY, STATE, & ZIP CODE:** San Diego, CA  92101-3827
**BRANCH NAME:**     Central

**PLAINTIFF(S):**     Tyler Walter by and through his successor in interest Lisa Walter et.al.

**DEFENDANT(S):** County of San Diego et.al.

**SHORT TITLE:**     TYLER WALTER BY AND THROUGH HIS SUCCESSOR IN INTEREST LISA WALTER VS COUNTY OF SAN DIEGO [IMAGED]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2019-00053901-CU-CR-CTL |
|---|---|

Judge: Randa Trapp                                                                 Department: C-70

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                              ☐ Binding private arbitration

☐ Voluntary settlement conference (private)        ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                     ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____          Date: _____

_____            _____
Name of Plaintiff                              Name of Defendant

_____            _____
Signature                                      Signature

_____            _____
Name of Plaintiff's Attorney                   Name of Defendant's Attorney

_____            _____
Signature                                      Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 10/11/2019                                _____
                                                 JUDGE OF THE SUPERIOR COURT

EXHIBIT A

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Shawn A. McMillan      State Bar #208529<br>Adrian M. Paris       State Bar #301335<br>495 Via Lapiz<br>San Diego, CA 92122<br>TELEPHONE NO.: (858)646-0069    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**12/09/2019** at 09:43:00 AM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego | |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: San Diego, CA 92101 | |
| BRANCH NAME: Central Division, Downtown Hall of Justice | |

| PLAINTIFF/PETITIONER: WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of:
    a. [✓] summons
    b. [✓] complaint
    c. [✓] Alternative Dispute Resolution (ADR) package
    d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
    e. [ ] cross-complaint
    f. [✓] other *(specify documents):* Notice of Case Assignment; Notice of Re-assignment; Notice of CMC

3.  a. Party served *(specify name of party as shown on documents served):*
    COUNTY OF SAN DIEGO

    b. [✓] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
    COUNTY OF SAN DIEGO by serving DIANA LOPEZ, Deputy County Clerk

4.  Address where the party was served:
    1600 Pacific Highway, 4th Floor, San Diego, CA 92101 (County Clerk of the Board)
5.  I served the party *(check proper box)*
    a. [✓] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 11/27/2019    (2) at *(time):* 3:04 p.m.
    b. [ ] **by substituted service.** On *(date):*    at *(time):*    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    or [ ] a declaration of mailing is attached.

        (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

PROOF OF SERVICE OF SUMMONS
EXHIBIT A

Code of Civil Proc...

| PLAINTIFF/PETITIONER:  WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

5.  c.  [ ]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*     (2)  from *(city):*

    (3)  [ ]  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.  *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4)  [ ]  to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

  d.  [ ]  **by other means** *(specify means of service and authorizing code section):*

    [ ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  [ ]  as an individual defendant.
  b.  [ ]  as the person sued under the fictitious name of *(specify):*
  c.  [ ]  as occupant.
  d.  [✓]  On behalf of *(specify):*   COUNTY OF SAN DIEGO
    under the following Code of Civil Procedure section:

| | |
|---|---|
| [ ] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [✓] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other: |

7.  **Person who served papers**
  a.  Name:  Timothy J. Wing
  b.  Address:  1255 Imperial Avenue, Ste. 120-150, San Diego, CA  92101
  c.  Telephone number:  619-993-9464
  d.  **The fee** for service was:  $ 50.00
  e.  I am:
    (1)  [ ]  not a registered California process server.
    (2)  [ ]  exempt from registration under Business and Professions Code section 22350(b).
    (3)  [✓]  a registered California process server:
      (i)  [✓] owner  [ ] employee  [ ] independent contractor.
      (ii)  Registration No.: 3110
      (iii)  County:  San Diego

8.  [✓]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  [ ]  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:   December 2, 2019

TIMOTHY J. WING
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

EXHIBIT A

**POS-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Shawn A.McMillan        State Bar #208529<br>Adrian M. Paris        State Bar #301335<br>495 Via Lapiz<br>San Diego, CA 92122<br>TELEPHONE NO.: (858)646-0069        FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* plaintiff | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**12/09/2019** at 09:45:00 AM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego<br>STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Central Division, Downtown Hall of Justice | |

| | |
|---|---|
| **PLAINTIFF/PETITIONER:** WALTER<br><br>**DEFENDANT/RESPONDENT:** COUNTY OF SAN DIEGO | **CASE NUMBER:**<br>37-2019-00053901-CU-CR-CTL |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | **Ref. No. or File No.:** |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [✓] summons
   b. [✓] complaint
   c. [✓] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [✓] other *(specify documents):* Notice of Case Assignment; Notice of Re-assignment; Notice of CMC

3. a. Party served *(specify name of party as shown on documents served):*
   MELINDA EICHENBERG

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   367 North Magnolia Avenue, El Cajon, CA 92020
5. I served the party *(check proper box)*
   a. [✓] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 11/20/2019    (2) at *(time):* 3:01 p.m.
   b. [ ] **by substituted service.** On *(date):*        at *(time):*        I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*        from *(city):*        or [ ] a declaration of mailing is attached.

   (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

EXHIBIT A

| PLAINTIFF/PETITIONER: WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1)  on *(date):*                                   (2)  from *(city):*

   (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.  *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

   (4)  ☐  to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

   d.  ☐  **by other means** *(specify means of service and authorizing code section):*

   ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
   a.  ☑  as an individual defendant.
   b.  ☐  as the person sued under the fictitious name of *(specify):*
   c.  ☐  as occupant.
   d.  ☐  On behalf of *(specify):*

   under the following Code of Civil Procedure section:

   ☐  416.10 (corporation)                          ☐  415.95 (business organization, form unknown)
   ☐  416.20 (defunct corporation)                  ☐  416.60 (minor)
   ☐  416.30 (joint stock company/association)      ☐  416.70 (ward or conservatee)
   ☐  416.40 (association or partnership)           ☐  416.90 (authorized person)
   ☐  416.50 (public entity)                        ☐  415.46 (occupant)
                                                     ☐  other:

7.  **Person who served papers**
   a.  Name:  Timothy J. Wing
   b.  Address:  1255 Imperial Avenue, Ste. 120-150, San Diego, CA  92101
   c.  Telephone number:  619-993-9464
   d.  **The fee for service was:**  $ 50.00
   e.  I am:

   (1)  ☐  not a registered California process server.
   (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
   (3)  ☑  a registered California process server:
        (i)   ☑ owner    ☐ employee    ☐ independent contractor.
        (ii)  Registration No.:  3110
        (iii) County:  San Diego

8.  ☑  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:   December 2, 2019

TIMEOTHY J. WING
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                          ► _____
                                                                               (SIGNATURE )

EXHIBIT A

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Shawn A.McMillan          State Bar #208529<br>Adrian M. Paris          State Bar #301335<br>495 Via Lapiz<br>San Diego, CA 92122<br>TELEPHONE NO.: (858)646-0069          FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**12/09/2019** at 09:48:00 AM<br><br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego |
|---|
| STREET ADDRESS: 330 West Broadway |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Diego, CA 92101 |
| BRANCH NAME: Central Division, Downtown Hall of Justice |

| PLAINTIFF/PETITIONER: WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of:
    a.  [✓] summons
    b.  [✓] complaint
    c.  [✓] Alternative Dispute Resolution (ADR) package
    d.  [ ] Civil Case Cover Sheet *(served in complex cases only)*
    e.  [ ] cross-complaint
    f.  [✓] other *(specify documents):* Notice of Case Assignment; Notice of Re-assignment; Notice of CMC

3.  a.  Party served *(specify name of party as shown on documents served):*
        FANITA DURHAM

    b.  [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4.  Address where the party was served:
    367 North Magnolia Avenue, El Cajon, CA 92020

5.  I served the party *(check proper box)*
    a.  [✓] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 11/20/2019   (2) at *(time):* 3:04 p.m.
    b.  [ ] **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          or [ ] a declaration of mailing is attached.

        (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

EXHIBIT A

| PLAINTIFF/PETITIONER: WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

  (1) on *(date):*  (2) from *(city):*

  (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

  (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

  ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

  ☐ 416.10 (corporation)  ☐ 415.95 (business organization, form unknown)
  ☐ 416.20 (defunct corporation)  ☐ 416.60 (minor)
  ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
  ☐ 416.40 (association or partnership)  ☐ 416.90 (authorized person)
  ☐ 416.50 (public entity)  ☐ 415.46 (occupant)
    ☐ other:

7. **Person who served papers**
  a. Name: Timothy J. Wing
  b. Address: 1255 Imperial Avenue, Ste. 120-150, San Diego, CA 92101
  c. Telephone number: 619-993-9464
  d. **The fee for service was:** $ 50.00
  e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ a registered California process server:
      (i) ☑ owner  ☐ employee  ☐ independent contractor.
      (ii) Registration No.: 3110
      (iii) County: San Diego

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  December 2, 2019

TIMOTHY J. WING
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

EXHIBIT A

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Shawn A.McMillan               State Bar #208529<br>Adrian M. Paris                   State Bar #301335<br>495 Via Lapiz<br>San Diego, CA 92122<br>TELEPHONE NO.: (858)646-0069    FAX NO. *(Optional)*:<br>E–MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*:  plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**12/09/2019** at 09:49:00 AM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego |  |
|---|---|
| STREET ADDRESS:    330 West Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:    San Diego, CA  92101<br>BRANCH NAME:    Central Division, Downtown Hall of Justice |  |

| PLAINTIFF/PETITIONER: WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of:
    a.  [✓]  summons
    b.  [✓]  complaint
    c.  [✓]  Alternative Dispute Resolution (ADR) package
    d.  [ ]  Civil Case Cover Sheet *(served in complex cases only)*
    e.  [ ]  cross-complaint
    f.  [✓]  other *(specify documents)*:  Notice of Case Assignment; Notice of Re-assignment; Notice of CMC

3.  a.  Party served *(specify name of party as shown on documents served)*:
        JOANNA KIENTZ

    b.  [ ]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4.  Address where the party was served:
    2515 Ramfos Place, San Diego, CA 92139
5.  I served the party *(check proper box)*
    a.  [✓]  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 12/1/2019   (2) at *(time)*: 10:32 a.m.
    b.  [ ]  **by substituted service.** On *(date)*:        at *(time)*:        I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

        (1)  [ ]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2)  [ ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3)  [ ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4)  [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:        from *(city)*:        or [ ] a declaration of mailing is attached.

        (5)  [ ]  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>PDS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

EXHIBIT A

| PLAINTIFF/PETITIONER: WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                  (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

      ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☑ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☐ On behalf of *(specify):*
      under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
   a. Name: Timothy J. Wing
   b. Address: 1255 Imperial Avenue, Ste. 120-150, San Diego, CA 92101
   c. Telephone number: 619-993-9464
   d. **The fee for service was:** $ 50.00
   e. I am:
     (1) ☐ not a registered California process server.
     (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
     (3) ☑ a registered California process server:
       (i) ☑ owner  ☐ employee  ☐ independent contractor.
       (ii) Registration No.: 3110
       (iii) County: San Diego

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: December 2, 2019

_____
TIMOTHY J. WING
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

EXHIBIT A

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Shawn A. McMillan          State Bar #208529<br>Adrian M. Paris          State Bar #301335<br>495 Via Lapiz<br>San Diego, CA  92122<br>TELEPHONE NO.: (858)646-0069          FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**12/09/2019** at 09:51:00 AM<br><br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego |
|---|
| STREET ADDRESS: 330 West Broadway |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Diego, CA  92101 |
| BRANCH NAME: Central Division, Downtown Hall of Justice |

| PLAINTIFF/PETITIONER: WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [✓] summons
   b. [✓] complaint
   c. [✓] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [✓] other *(specify documents):* Notice of Case Assignment; Notice of Re-assignment; Notice of CMC

3. a. Party served *(specify name of party as shown on documents served):*
      KATHERINE MANNO (TOPPIN)

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   7947 Mission Center Court, San Diego, CA  92108

5. I served the party *(check proper box)*
   a. [✓] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 11/26/2019    (2) at *(time):*  2:17 p.m.
   b. [ ] **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):* San Diego          or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

EXHIBIT A

| PLAINTIFF/PETITIONER: WALTER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COUNTY OF SAN DIEGO | 37-2019-00053901-CU-CR-CTL |

5.  c.  [   ]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*             (2)  from *(city):*

    (3)  [   ]  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me.  *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4)  [   ]  to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

  d.  [   ]  **by other means** *(specify means of service and authorizing code section):*

    [   ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  [✓]  as an individual defendant.
  b.  [   ]  as the person sued under the fictitious name of *(specify):*
  c.  [   ]  as occupant.
  d.  [   ]  On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    [   ] 416.10 (corporation)                 [   ] 415.95 (business organization, form unknown)
    [   ] 416.20 (defunct corporation)           [   ] 416.60 (minor)
    [   ] 416.30 (joint stock company/association)  [   ] 416.70 (ward or conservatee)
    [   ] 416.40 (association or partnership)      [   ] 416.90 (authorized person)
    [   ] 416.50 (public entity)                [   ] 415.46 (occupant)
                                        [   ] other:

7.  **Person who served papers**
  a.  Name: Timothy J. Wing
  b.  Address: 1255 Imperial Avenue, Ste. 120-150, San Diego, CA  92101
  c.  Telephone number: 619-993-9464
  d.  The fee for service was: $ 50.00
  e.  I am:
    (1)  [   ]  not a registered California process server.
    (2)  [   ]  exempt from registration under Business and Professions Code section 22350(b).
    (3)  [✓]  a registered California process server:
      (i)  [✓] owner  [   ] employee  [   ] independent contractor.
      (ii)  Registration No.: 3110
      (iii)  County: San Diego

8.  [✓]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  [   ]  **I am a California sheriff or marshal** and I certify that the foregoing is true and correct.

Date:  December 4, 2019

TIMOTHY J. WING

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)           ▶          (SIGNATURE )

EXHIBIT A

| ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NO: 301355 | **ELECTRONICALLY FILED** |
|---|---|
| NAME: Adrian M. Paris, Esq. | Superior Court of California, |
| FIRM NAME: The Law Offices of Shawn A. McMillan, A.P.C. | County of San Diego |
| STREET ADDRESS: 4955 Via Lapiz | **12/09/2019** at 09:53:00 AM |
| CITY: San Diego        STATE: CA    ZIP CODE: 92122 | Clerk of the Superior Court |
| TELEPHONE NO.: (858) 646-0069    FAX NO.: (858) 746-5283 | By E- Filing,Deputy Clerk |
| E-MAIL ADDRESS: adrian.mcmillanlaw@gmail.com | |
| ATTORNEY FOR (Name): Lisa Walter | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central

| Plaintiff/Petitioner: | Tyler Walter, by and through Lisa Walter, et al. |
|---|---|
| Defendant/Respondent: | County of San Diego, et al. |

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>37-2019-00053901-CU-CR-CTL |
|---|---|

TO (insert name of party being served): Jake Zindulka, Esq., on behalf of Defendant Melissa Castillo

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: December 4, 2019

Adrian M. Paris, Esq.
(TYPE OR PRINT NAME)          ► (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. [X] A copy of the summons and of the complaint.
2. [X] Other (specify):
   - Civil Cover Sheet        - ADR Information
   - Notice of Assignment    - Stipulation to ADR
   - Notice of Reassignment
   - Notice of CMC Hearing

(To be completed by recipient):

Date this form is signed: December 4, 2019

Jake Zindulka,
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

on behalf of Defendant
Melissa Castillo

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Defendant Melissa Castillo

Page 1 of 1

Form Adopted for Mandatory Use        **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**        Code of Civil Procedure,
Judicial Council of California                                                                                        §§ 415.30, 417.10
POS-015 [Rev. January 1, 2005]                                                                                    www.courtinfo.ca.gov

# EXHIBIT A